1  J. CHRISTOPHER JACZKO (149317)
   ALLISON H. GODDARD (211098)
2  JACZKO GODDARD LLP
   4401 Eastgate Mall
3  San Diego, CA 92121
   Telephone:    (858) 404-9205
4  Facsimile:    (858) 225-3500

5  DALE LISCHER (*Admitted Pro Hac Vice*)
   ELIZABETH G. BORLAND (*Admitted Pro Hac Vice*)
6  KERRI A. HOCHGESANG (*Admitted Pro Hac Vice*)
   SMITH, GAMBRELL & RUSSELL, LLP
7  Promenade II, Suite 3100
   1230 Peachtree St. N.E.
8  Atlanta, GA  30309
   Telephone:    (404) 815-3500
9  Facsimile:    (404) 685-6945

10 Attorneys for Defendant
   GIANT INTERNATIONAL (USA) LTD.

11

12                 **UNITED STATES DISTRICT COURT**

13           **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

14

15 JENS ERIK SORENSEN, as Trustee of      )   No. 07-CV-02121-BTM-CAB
   SORENSEN RESEARCH AND                  )
16 DEVELOPMENT TRUST,                     )   **DECLARATION OF**
                                          )   **ALLISON H. GODDARD IN**
17            Plaintiff,                  )   **SUPPORT OF DEFENDANT'S**
                                          )   **MOTION TO STAY PENDING**
18 v.                                     )   **OUTCOME OF REEXAMINATION**
                                          )   **PROCEEDINGS**
19 GIANT INTERNATIONAL (USA) LTD.,        )
   a Delaware corporation, and DOES 1-10, )
20                                         )   ***NO ORAL ARGUMENT UNLESS***
             Defendants.                  )   ***REQUESTED BY THE COURT***
21 ─────────────────────────────────────  )
                                          )   Date:   February 8, 2008
22 GIANT INTERNATIONAL (USA) LTD., a      )   Time:  11:00 am
   Delaware corporation,                  )   Courtroom 15 - 5th Floor
23                                         )
             Cross-Complainant,           )
24                                         )
   v.                                     )
25                                         )
   JENS ERIK SORENSEN, as Trustee of      )
26 SORENSEN RESEARCH AND                  )
   DEVELOPMENT TRUST,                     )
27                                         )
             Cross-Defendant.             )
28                                         )

                                    1
                                                  Case No. 07-CV-02121-BTM-CAB

I, Allison H. Goddard, declare as follows:

1.      I am an attorney duly licensed to practice before the courts of this State and am a partner in the law firm of Jaczko Goddard LLP, attorneys of record herein for Defendant Giant International (USA) Ltd.  The matters set forth herein are based on my own personal knowledge and if called upon to testify, I could and would testify competently thereto.

2.      A true and correct copy of the Reexamination Order for U.S. Patent No. 4,935,183 is attached hereto as Exhibit A.

3.      A true and correct copy of the Court's order granting defendant's Motion to Stay a related case, 06cv1572 BTM (CAB), *Sorensen v. Black & Decker Corp.*, 2007 WL 2696590 (S.D. Cal. Sept. 10, 2007) is attached hereto as Exhibit B.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed this 10th day of December, 2007, at San Diego, California.


_____s/Allison H. Goddard_____
Allison H. Goddard

***Sorensen v. Giant International (USA) Ltd.***

**USDC Case No. 07cv02121 BTM (CAB)**

**<u>Certificate of Service</u>**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served this 10th day of December, 2007, with a copy of this document via the Court's CM/ECF system.  I certify that all parties in this case are represented by counsel who are CM/ECF participants.  Any other counsel of record will be served by electronic mail, facsimile transmission, and/or first class mail on the following business day.

                                          /s/  Allison H. Goddard

# EXHIBIT A

 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/008,775 | 07/30/2007 | 4935184 | X32441 | 9943 |

| | | |
|---|---|---|
| 22653    7590    10/11/2007 | | EXAMINER |

EDWARD W CALLAN
NO. 705 PMB 452
3830 VALLEY CENTRE DRIVE
SAN DIEGO, CA  92130

| ART UNIT | PAPER NUMBER |
|---|---|
| | |

DATE MAILED: 10/11/2007

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 10/03)

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS

10/11/07

Arnold Turk, Esq.

Greenblum & Bernstein P. L. C.

1950 Roland Clarke Place

Reston VA   20191

## *EX PARTE*  REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO  90/008775

PATENT NO.   4,935,184

ART UNIT 3992

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified ex parte reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the ex parte reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

| *Order Granting / Denying Request For Ex Parte Reexamination* | Control No. 90/008,775 | Patent Under Reexamination 4935184 | |
|---|---|---|---|
| | Examiner Alan Diamond | Art Unit 3991 | |

*--The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

The request for *ex parte* reexamination filed <u>30 July 2007</u> has been considered and a determination has been made. An identification of the claims, the references relied upon, and the rationale supporting the determination are attached.

Attachments:  a)☐ PTO-892,      b)☒ PTO/SB/08,      c)☐ Other: _____

1. ☒  The request for *ex parte* reexamination is GRANTED.

RESPONSE TIMES ARE SET AS FOLLOWS:

For Patent Owner's Statement (Optional): TWO MONTHS from the mailing date of this communication (37 CFR 1.530 (b)). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**

For Requester's Reply (optional): TWO MONTHS from the **date of service** of any timely filed Patent Owner's Statement (37 CFR 1.535). **NO EXTENSION OF THIS TIME PERIOD IS PERMITTED.** If Patent Owner does not file a timely statement under 37 CFR 1.530(b), then no reply by requester is permitted.

2. ☐  The request for *ex parte* reexamination is DENIED.

This decision is not appealable (35 U.S.C. 303(c)).  Requester may seek review by petition to the Commissioner under 37 CFR 1.181 within ONE MONTH from the mailing date of this communication (37 CFR 1.515(c)).  **EXTENSION OF TIME TO FILE SUCH A PETITION UNDER 37 CFR 1.181  ARE AVAILABLE ONLY BY PETITION TO SUSPEND OR WAIVE THE  REGULATIONS UNDER 37 CFR 1.183.**

In due course, a refund under 37 CFR 1.26 ( c ) will be made to requester:

    a) ☐  by Treasury check or,

    b) ☐  by credit to Deposit Account No. _____,  or

    c) ☐  by credit to a credit card account, unless otherwise notified (35 U.S.C. 303(c)).

Alan  Diamond
Primary Examiner
Art Unit: 3991

Application/Control Number: 90/008,775                                    Page 2
Art Unit: 3991

### Decision on Reexamination Request

1.    A substantial new question of patentability affecting claims 1, 2, 4, and 6-10 of

United States Patent Number 4,935,184 to Sorensen, is raised by the request for *ex*

*parte* reexamination.  The request for reexamination is Third Party requested.

2.    Since requestor did not request reexamination of claims 3 and 5 and did not

assert the existence of a substantial new question of patentability (SNQ) for such claims

(see 35 U.S.C. § 302); see also 37 CFR 1.510b and 1.515), such claims will not be

reexamined.  This matter was squarely addressed in *Sony Computer Entertainment*

*America Inc., et al v. Jon W. Dudas*, Civil Action No. 1:05CV1447 (E.D.Va. May 22,

2006), Slip Copy, 2006 WL 1472462.  The District Court upheld the Office's discretion to

not reexamine claims in a reexamination proceeding other than those claims for which

reexamination had specifically been requested.  The Court stated:

> "To be sure, a party may seek, and the PTO may grant, ...review of each and every
> claim of a patent. Moreover, while the PTO in its discretion may review claims for
> which ... review was not requested, nothing in the statute compels it to do so. To
> ensure that the PTO considers a claim for ... review, ...requires that the party
> seeking reexamination demonstrate why the PTO should reexamine each and every
> claim for which it seeks review. Here, it is undisputed that **Sony** did not seek review
> of every claim under the '213 and '333 patents. Accordingly, **Sony** cannot now
> claim that the PTO wrongly failed to reexamine claims for which **Sony** never
> requested review, and its argument that AIPA compels a contrary result is
> unpersuasive."

### Extension of Time

3.    Extensions of time under 37 CFR 1.136(a) will not be permitted in these

proceedings because the provisions of 37 CFR 1.136 apply only to "an applicant" and

not to parties in a reexamination proceeding.  Additionally, 35 U.S.C. 305 requires that

Application/Control Number: 90/008,775                    Page 3
Art Unit: 3991

*ex parte* reexamination proceedings "will be conducted with special dispatch" (37

CFR 1.550(a)). Extensions of time in *ex parte* reexamination proceedings are provided

for in 37 CFR 1.550(c).


### Substantial New Question of Patentability (SNQ)

4.    The presence or absence of a "substantial new question of patentability"

determines whether or not reexamination is ordered.

For a "substantial new question of patentability" to be present, it is only

necessary that :

A) the prior art patents and/or printed publications raise a substantial new

question of patentability regarding at least one claim, i.e., the teaching of the (prior art)

patents and printed publications is such that a reasonable examiner would consider the

teaching to be important in deciding whether or not the claim is patentable; and

B) the same question of patentability as to the claim has not been decided by the

Office in a previous examination of the patent or in a final holding of invalidity by the

Federal Courts in a decision on the merits involving the claim.

A SNQ may be based solely on old art where the old art is being

presented/viewed in a new light, or in a different way, as compared with its use in the

earlier concluded examination(s), in view of a material new argument or interpretation in

the request. (MPEP 2242).

Application/Control Number: 90/008,775                                    Page 4
Art Unit: 3991

### *Request*

5.     The request indicates the Requestor considers that Moscicki (U.S. Patent
3,178,497) raises a substantial new question of patentability with respect to
claims 1, 4, 6-8 and 10 of Sorensen.

It is agreed that consideration of Moscicki raises a substantial new question of
patentability as to claims 1, 4, 6-8 and 10 of Sorensen.  Page 28, line 14 though page
32, seventh line from the bottom; page 56 at the start of section 8 through page 58, line
5; page 83, line 13 through page 86, line 9; page 86, line 22 through page 87, line 22;
page 94, lines 1-19; page 98, line 6 through page 99, line 2; and page 107, line 18
through page 108, line 11, of the request for reexamination are hereby incorporated by
reference for their explanation of the teaching provided in Moscicki that was not present
in the prosecution of the application which became the Sorensen patent.  There is a
substantial likelihood that a reasonable examiner would consider this teaching important
in deciding whether or not claims 1, 4, 6-8 and 10 of Sorensen were patentable.
Accordingly, Moscicki raises a substantial new question of patentability as to claims 1,
4, 6-8 and 10, which question has not been decided in a previous examination of the
Sorensen patent.


6.     The request indicates the Requestor considers that Seima (GB 2004494 A)
raises a substantial new question of patentability with respect to claims 1, 2 and
6-10 of Sorensen.

Application/Control Number: 90/008,775                                           Page 5
Art Unit: 3991

It is agreed that consideration of Seima raises a substantial new question of
patentability as to claims 1, 2 and 6-10 of Sorensen. Page 32, sixth line from the
bottom, through the end of page 36; page 60, fifth line from the bottom, through page
62, line 3; page 80, line 10 through page 83, line 12; page 88, line 13 through page 89,
line 15; page 95, line 13 through page 96, line 9; page 99, line 15 through page 100,
line 11; page 104, line 1 through page 107, line 4; and page 109, lines 1-20, of the
request for reexamination are hereby incorporated by reference for their explanation of
the teaching provided in Seima that was not present in the prosecution of the
application which became the Sorensen patent. There is a substantial likelihood that a
reasonable examiner would consider this teaching important in deciding whether or not
claims 1, 2 and 6-10 of Sorensen were patentable. Accordingly, Seima raises a
substantial new question of patentability as to claims 1, 2 and 6-10, which question has
not been decided in a previous examination of the Sorensen patent.


7.      **The request indicates the Requestor considers that Gits (U.S. Patent
2,863,241) raises a substantial new question of patentability with respect to claim
1 of Sorensen.**

It is agreed that consideration of Gits raises a substantial new question of
patentability as to claim 1 of Sorensen. Page 37, line 1 through the end of section 3 on
page 40, of the request for reexamination are hereby incorporated by reference for their
explanation of the teaching provided in Gits that was not present in the prosecution of
the application which became the Sorensen patent. There is a substantial likelihood

Application/Control Number: 90/008,775                                    Page 6
Art Unit: 3991

that a reasonable examiner would consider this teaching important in deciding whether

or not claim 1 of Sorensen was patentable. Accordingly, Gits raises a substantial new

question of patentability as to claim 1, which question has not been decided in a

previous examination of the Sorensen patent.


8.      **The request indicates the Requestor considers that Shiho *et al* (U.S. Patent**

**4,440,820, hereinafter "Shiho") raises a substantial new question of patentability**

**with respect to claims 1, 6-8 and 10 of Sorensen.**

        It is agreed that consideration of Shiho raises a substantial new question of

patentability as to claims 1, 6-8 and 10 of Sorensen. The beginning of section 4 on

page 40 through the end of section 4 on page 44; page 90, lines 4-20; page 96, line 23

through page 97, line 6; page 101, lines 1-11; and page 110, lines 14-23, of the request

for reexamination are hereby incorporated by reference for their explanation of the

teaching provided in Shiho that was not present in the prosecution of the application

which became the Sorensen patent. There is a substantial likelihood that a reasonable

examiner would consider this teaching important in deciding whether or not claims 1, 6-

8 and 10 of Sorensen were patentable. Accordingly, Shiho raises a substantial new

question of patentability as to claims 1, 6-8 and 10, which question has not been

decided in a previous examination of the Sorensen patent.

Application/Control Number: 90/008,775                                    Page 7
Art Unit: 3991

9.      **The request indicates the Requestor considers that JP 60-119520 U to**
**Toyota Motor (hereinafter "Toyota") raises a substantial new question of**
**patentability with respect to claim 1 of Sorensen.**

        It is agreed that consideration of Toyota raises a substantial new question of
patentability as to claim 1 of Sorensen.  The beginning of section 5 on page 44 through
the end of section 5 on page 48; and page 70, line 1 through page 71, line 8, of the
request for reexamination are hereby incorporated by reference for their explanation of
the teaching provided in Toyota that was not present in the prosecution of the
application which became the Sorensen patent.  There is a substantial likelihood that a
reasonable examiner would consider this teaching important in deciding whether or not
claim 1 of Sorensen was patentable.  Accordingly, Toyota raises a substantial new
question of patentability as to claim 1, which question has not been decided in a
previous examination of the Sorensen patent.

10.     **The request indicates the Requestor considers that German Published**
**Patent Application No. 1850999 to Echterholter raises a substantial new question**
**of patentability with respect to claim 1 of Sorensen.**

        It is agreed that consideration of Echterholter raises a substantial new question
of patentability as to claim 1 of Sorensen.  The beginning of section 6 on page 48
through page 53, line 6; and page 73, line 10 through page 74, line 17, of the request
for reexamination are hereby incorporated by reference for their explanation of the
teaching provided in Echterholter that was not present in the prosecution of the

Application/Control Number: 90/008,775                                    Page 8
Art Unit: 3991

application which became the Sorensen patent.  There is a substantial likelihood that a

reasonable examiner would consider this teaching important in deciding whether or not

claim 1 of Sorensen was patentable.  Accordingly, Echterholter raises a substantial new

question of patentability as to claim 1, which question has not been decided in a

previous examination of the Sorensen patent.


11.     **The request indicates the Requestor considers that Wright, "New vigor for**

**two-shot molding automation… versatility… ingenuity," Modern Plastics, May**

**1986, pp. 79-83, (hereinafter "Modern Plastics") raises a substantial new question**

**of patentability with respect to claims 1, 6 and 8 of Sorensen.**

        It is agreed that consideration of Modern Plastics raises a substantial new

question of patentability as to claims 1, 6 and 8 of Sorensen.  Page 53, line 7 through

the end of section 7 on page 56; page 77, line 1 through page 78, line 8; page 92, line 9

through page 93, line 12; and page 102, line 16 through page 103, line 11, of the

request for reexamination are hereby incorporated by reference for their explanation of

the teaching provided in Modern Plastics that was not present in the prosecution of the

application which became the Sorensen patent.  There is a substantial likelihood that a

reasonable examiner would consider this teaching important in deciding whether or not

claims 1, 6 and 8 of Sorensen were patentable.  Accordingly, Modern Plastics raises a

substantial new question of patentability as to claims 1, 6 and 8, which question has not

been decided in a previous examination of the Sorensen patent.

Application/Control Number: 90/008,775                                      Page 9
Art Unit: 3991

12.    **The request indicates the Requestor considers that Moscicki in view of**
**Echterholter and further in view of Modern Plastics raises a substantial new**
**question of patentability with respect to claims 1, 4, 6-8 and 10 of Sorensen.**

It is agreed that consideration of Moscicki in view of Echterholter and further in
view of Modern Plastics raises a substantial new question of patentability as to claims 1,
4, 6-8 and 10 of Sorensen.  Page 58, line 6 through the end of section 9 on page 60;
page 86, lines 10-21; page 88, lines 1-12; page 95, lines 1-12; page 99, lines 3-14; and
page 108, lines 12-23, of the request for reexamination are hereby incorporated by
reference for their explanation of the teaching provided in Moscicki, Echterholter and
Modern Plastics that was not present in the prosecution of the application which
became the Sorensen patent.  There is a substantial likelihood that a reasonable
examiner would consider this teaching important in deciding whether or not claims 1, 4,
6-8 and 10 of Sorensen were patentable.  Accordingly, Moscicki in view of Echterholter
and further in view of Modern Plastics raises a substantial new question of patentability
as to claims 1, 4, 6-8 and 10, which question has not been decided in a previous
examination of the Sorensen patent.

13.    **The request indicates the Requestor considers that Seima in view of**
**Echterholter and further in view of Modern Plastics raises a substantial new**
**question of patentability with respect to claims 1 and 6-10 of Sorensen.**

It is agreed that consideration of Seima in view of Echterholter and further in view
of Modern Plastics raises a substantial new question of patentability as to claims 1 and

Application/Control Number: 90/008,775                                    Page 10
Art Unit: 3991

6-10 of Sorensen.  Page 62, line 4 through page 64, line 3; page 89, line 16 through

page 90, line 3; page 96, lines 10-22; page 100, lines 12-24; page 107, lines 5-17; and

page 110, lines 1-13, of the request for reexamination are hereby incorporated by

reference for their explanation of the teaching provided in Seima, Echterholter and

Modern Plastics that was not present in the prosecution of the application which

became the Sorensen patent.  There is a substantial likelihood that a reasonable

examiner would consider this teaching important in deciding whether or not claims 1

and 6-10 of Sorensen were patentable.  Accordingly, Seima in view of Echterholter and

further in view of Modern Plastics raises a substantial new question of patentability as to

claims 1 and 6-10, which question has not been decided in a previous examination of

the Sorensen patent.

14.    At page 64, line 4 through page 67, line 18; page 90, line 21 through page

91, line 13; page 97, lines 7-16; and page 101, lines 12-22, the request indicates

the Requestor considers that Schad (U.S. Patent 4,422,995) raises a substantial

new question of patentability with respect to claims 1 and 6-8 of Sorensen.

        Schad **does not** raise a substantial new question of patentability with respect to

claims 1 and 6-8 of Sorensen.  In the prosecution of application Serial No. 07/386,012,

which matured into the Sorensen patent, Schad was used to reject all the claims (1-10)

under 35 USC 103(a).  The rejection over Schad was overcome and the Sorensen

patent was allowed after applicant amended steps (h) and (i) of claim 1 so as to recite

the injection of first/second plastic material until it reaches the portion of the first/second

Application/Control Number: 90/008,775                                          Page 11
Art Unit: 3991

mold cavity that defines the rim of the product.  Third party requestor even admits at

page 66, lines 16-18, of the request that "Schad does not specifically disclose a first

injection material which 'reaches the portion of the mold cavity that defines the rim of

the product.'"  Third party requestor cites *KSR int'l Co. v. Teleflex Inc.* and design

choice for the obviousness of modifying Schad so that a first injection material reaches

the portion of the mold cavity that defines the rim of the product (Request, pages 66-

67).  Third party requestor notes that "design choice" with respect to product shape was

considered by the Examiner in the rejection over Schad that was mailed 10/11/1988

during prosecution of the 07/386,012 application (see page 67 of the Request).

Consideration of Shad in view of *KSR int'l Co. v. Teleflex Inc.* or  "design choice" does

not provide any new teaching with respect to Schad as compared with its use in the

prosecution of the Sorensen patent.  Accordingly, Schad is not being viewed in a new

light compared with its use in the prosecution of the Sorensen patent, and thus, does

not raise a substantial new question of patentability with respect to claims 1 and 6-8 of

Sorensen.


15.     **The request indicates the Requestor considers that Schad in view of**

**Moscicki and further in view of Seima and Shiho raises a substantial new**

**question of patentability with respect to claims 1 and 6-8 of Sorensen.**

        It is agreed that consideration of Schad in view of Moscicki and further in view of

Seima and Shiho raises a substantial new question of patentability as to claims 1 and 6-

8 of Sorensen.  Page 67, lines 19 through the last line on page 69; page 91, line 14

Application/Control Number: 90/008,775                                    Page 12
Art Unit: 3991

through page 92, line 8; page 97, line 17 through page 98, line 5; and page 102, lines 1-

15, of the request for reexamination are hereby incorporated by reference for their

explanation of the teaching provided in Schad, Moscicki, Seima and Shiho that was not

present in the prosecution of the application which became the Sorensen patent. There

is a substantial likelihood that a reasonable examiner would consider this teaching

important in deciding whether or not claims 1 and 6-8 of Sorensen were patentable.

Accordingly, Schad in view of Moscicki and further in view of Seima and Shiho raises a

substantial new question of patentability as to claims 1 and 6-8, which question has not

been decided in a previous examination of the Sorensen patent.


16.     **The request indicates the Requestor considers that Toyota in view of**

**Moscicki and further in view of Seima and Shiho raises a substantial new**

**question of patentability with respect to claim 1 of Sorensen.**

        It is agreed that consideration of Toyota in view of Moscicki and further in view of

Seima and Shiho raises a substantial new question of patentability as to claim 1 of

Sorensen. Page 71, line 9 through page 73, line 9, of the request for reexamination are

hereby incorporated by reference for their explanation of the teaching provided in

Toyota, Moscicki, Seima and Shiho that was not present in the prosecution of the

application which became the Sorensen patent. There is a substantial likelihood that a

reasonable examiner would consider this teaching important in deciding whether or not

claim 1 Sorensen was patentable. Accordingly, Toyota in view of Moscicki and further

in view of Seima and Shiho raises a substantial new question of patentability as to claim

Application/Control Number: 90/008,775                    Page 13
Art Unit: 3991

1, which question has not been decided in a previous examination of the Sorensen patent.

17.     The request indicates the Requestor considers that Echterholter in view of Moscicki and further in view of Seima and Shiho raises a substantial new question of patentability with respect to claim 1 of Sorensen.

It is agreed that consideration of Echterholter in view of Moscicki and further in view of Seima and Shiho raises a substantial new question of patentability as to claim 1 of Sorensen. Page 74, line 18 through the last line on page 76, of the request for reexamination are hereby incorporated by reference for their explanation of the teaching provided in Echterholter, Moscicki, Seima and Shiho that was not present in the prosecution of the application which became the Sorensen patent. There is a substantial likelihood that a reasonable examiner would consider this teaching important in deciding whether or not claim 1 Sorensen was patentable. Accordingly, Echterholter in view of Moscicki and further in view of Seima and Shiho raises a substantial new question of patentability as to claim 1, which question has not been decided in a previous examination of the Sorensen patent.

18.     The request indicates the Requestor considers that Modern Plastics in view of Moscicki and further in view of Seima and Shiho raises a substantial new question of patentability with respect to claims 1, 6 and 8 of Sorensen.

Application/Control Number: 90/008,775                                    Page 14
Art Unit: 3991

It is agreed that consideration of Modern Plastics in view of Moscicki and further

in view of Seima and Shiho raises a substantial new question of patentability as to

claims 1, 6 and 8 of Sorensen.  Page 78, line 9 through page 80, line 9; page 93, lines

13-25; and page 103, lines 12-24, of the request for reexamination are hereby

incorporated by reference for their explanation of the teaching provided in Modern

Plastics, Moscicki, Seima and Shiho that was not present in the prosecution of the

application which became the Sorensen patent.  There is a substantial likelihood that a

reasonable examiner would consider this teaching important in deciding whether or not

claims 1, 6 and 8 of Sorensen were patentable.  Accordingly, Modern Plastics in view of

Moscicki and further in view of Seima and Shiho raises a substantial new question of

patentability as to claims 1, 6 and 8, which question has not been decided in a previous

examination of the Sorensen patent.


### *Duty to Disclose*

19.    The patent owner is reminded of the continuing responsibility under 37 CFR

1.565(a) to apprise the Office of any litigation activity, or other prior or concurrent

proceeding, involving Patent No. 4,935,184 throughout the course of this reexamination

proceeding.  The third party requestor is also reminded of the ability to similarly apprise

the Office of any such activity or proceeding throughout the course of this reexamination

proceeding.  See MPEP §§ 2207, 2282 and 2286.

Application/Control Number: 90/008,775                                      Page 15
Art Unit: 3991

### *Correspondence*

14.     Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Alan Diamond whose telephone number is (571) 272-

1338.  The examiner can normally be reached on Monday through Friday from 5:30

a.m. to 2:00 p.m.

        If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Deborah Jones can be reached on (571) 272-1535.

        Information regarding the status of an application may be obtained from the

Patent Application Information Retrieval (PAIR) system.  Status information for

published applications may be obtained from either Private PAIR or Public PAIR.

Status information for unpublished applications is available through Private PAIR only.

For more information about the PAIR system, see http://pair-direct.uspto.gov. Should

you have questions on access to the Private PAIR system, contact the Electronic

Business Center (EBC) at 866-217-9197 (toll-free).

### *Notice Re Patent Owner's Correspondence Address*

Effective May 16, 2007, 37 CFR 1.33(c) has been revised to provide that:

The patent owner's correspondence address for all communications in an *ex parte*
reexamination or an *inter partes* reexamination is designated as the correspondence
address of the patent.

> *Revisions and Technical Corrections Affecting Requirements for Ex Parte
> and Inter Partes Reexamination*, 72 FR 18892 (April 16, 2007)(Final Rule)

**The correspondence address for any pending reexamination proceeding not
having the same correspondence address as that of the patent is, by way of this**

Application/Control Number: 90/008,775                                    Page 16
Art Unit: 3991

revision to 37 CFR 1.33(c), <u>automatically changed to that of the patent file</u> as of
the effective date.

This change is effective for any reexamination proceeding which is pending before the
Office as of May 16, 2007, <u>including the present reexamination proceeding</u>, and to any
reexamination proceeding which is filed after that date.

Parties are to take this change into account when filing papers, and direct
communications accordingly.

In the event the patent owner's correspondence address listed in the papers (record) for
the present proceeding is different from the correspondence address of the patent, it is
strongly encouraged that the patent owner affirmatively file a Notification of Change of
Correspondence Address in the reexamination proceeding and/or the patent (depending
on which address patent owner desires), to conform the address of the proceeding with
that of the patent and to clarify the record as to which address should be used for
correspondence.

Telephone Numbers for reexamination inquiries:

Reexamination and Amendment Practice            (571) 272-7703
Central Reexam Unit (CRU)                        (571) 272-7705
Reexamination Facsimile Transmission No.         (571) 273-9900

Please mail any communications to:
        Attn: Mail Stop "Ex Parte Reexam"
        Central Reexamination Unit
        Commissioner for Patents
        P. O. Box 1450
        Alexandria VA  22313-1450

Please FAX any communications to:
        (571) 273-9900
        Central Reexamination Unit

Application/Control Number: 90/008,775                                   Page 17
Art Unit: 3991

Please hand-deliver any communications to:
     Customer Service Window
     Attn:  Central Reexamination Unit
     Randolph Building, Lobby Level
     401 Dulany Street
     Alexandria, VA  22314

Signed:

Alan Diamond                                    /Jerry D. Johnson/
Primary Examiner                                Primary Examiner
Central Reexamination Unit                      Art Unit 3991
Art Unit 3991
(571) 272-1338

                                        STEPHEN J. STEIN
                            CRU EXAMINER - AU 3991

# EXHIBIT B

Westlaw.

Slip Copy                                                                    Page 1
Slip Copy, 2007 WL 2696590 (S.D.Cal.)
(Cite as: Slip Copy)

Sorensen ex rel. Sorensen Research and Development Trust v. Black and Decker Corp.
S.D.Cal.,2007.
Only the Westlaw citation is currently available.
United States District Court,S.D. California.
Jens Erik SORENSEN, as Trustee of SORENSEN RESEARCH AND DEVELOPMENT TRUST, Plaintiff,
v.
The BLACK AND DECKER CORPORATION, et al., Defendants.
No. 06cv1572 BTM (CAB).

Sept. 10, 2007.

James Michael Kaler, Law Offices of James M. Kaler, Melody A. Kramer, Kramer Law Office, Patricia A. Shackelford, Zelkind and Shackelford, San Diego, CA, for Plaintiff.

Dina M. Hayes, Gregory P. Casimer, Raymond P. Niro, Jr., Niro, Scavone, Haller and Niro, Chicago, IL, John Christopher Jaczko, Allison H. Goddard, Jaczko Goddard, Kenneth S. Klein, Foley and Lardner LLP, San Diego, CA, Robert L. Binder, Foley & Lardner LLP, Milwaukee, WI, for Defendants.

## ORDER:

**(1) DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION OF DENIAL OF OBJECTIONS TO MAGISTRATE JUDGE'S ORDER OF APRIL 9, 2007 AS MOOT [Doc. # 163];**

**(2) GRANTING DEFENDANTS' MOTION FOR RECONSIDERATION OF THE COURT'S JUNE. 20, 2007 ORDER RE BIFURCATION [Doc. # 171];**

**(3) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO STAY [Doc. # 178];**

**and**

**(4) DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AS PRE-**

MATURE [Doc. # 204]

BARRY TED MOSKOWITZ, United States District Judge.

*I. Motion for Reconsideration of Denial of Objections to Magistrate Judge's Order*

**\*1** On April 9, 2007, Magistrate Judge Bencivengo issued an order in which she granted in part and denied in part Plaintiff's motion to compel further responses to discovery. In accordance with 28 U.S.C. § 636(b)(1)(A) and Fed.R.Civ.P. 72(a), Plaintiff filed an objection to that ruling, arguing that it was both clearly erroneous and contrary to law. In an order entered June 14, 2007, the Court overruled Plaintiff's objection without prejudice. The Court found that the Magistrate Judge's determinations regarding the Black & Decker Defendants' waiver of the attorney-client privilege, and the applicability of Patent Local Rule 2.5(d), were neither clearly erroneous nor contrary to law, on the record before the Court. However, the Court was unable to determine at that time whether, and to what extent, the Black & Decker Defendants ("B & D") intended to rely upon the death of Dennis Dearing to provide the requisite showing of prejudice in support of any laches and/or equitable estoppel defenses. Therefore, Plaintiff was granted leave to serve an interrogatory upon B & D, which stated: "Set forth, in detail, all prejudice to Defendants that resulted from the death of Dennis Dearing in regard to this case."To the extent Plaintiff believed that B & D's response to the interrogatory indicated that this Court's determination regarding waiver of the attorney-client privilege was in error, it was invited to move for reconsideration of the decision at that time.

On July 11, 2007, B & D responded to Plaintiff's interrogatory setting forth the prejudice that resulted from the death of its former in-house counsel Dennis Dearing. The prejudice identified included the inability to have Mr. Dearing testify regarding his communications in the mid-1990s pertaining to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                       Page 2
Slip Copy, 2007 WL 2696590 (S.D.Cal.)
**(Cite as: Slip Copy)**

Mr. Jens Ole Sorensen's claims of infringement of the 184 Patent. These communications included discussions directly with Mr. Sorensen and his representatives, as well as with John Schiech, Black & Decker's business manager responsible for making all decisions concerning the matter. B & D also indicated that it was prejudiced because it could not present Mr. Dearing as a witness to defend against Plaintiff's charge of willful infringement.

On July 12, 2007, Plaintiff filed the present motion to reconsider this Court's previous ruling on the basis of the new evidence presented in B & D's interrogatory response. The motion was calendared for hearing, without oral argument, on August 10, 2007. However, while the motion was pending, Magistrate Judge Bencivengo reconsidered her earlier ruling in light of B & D's interrogatory response. On August 3, 2007, Judge Bencivengo issued her "Order Following Discovery Conference on July 26, 2007" in which she ruled:

Since the defendant is affirmatively relying upon the death of Mr. Dearing to support its defense of laches, the plaintiff is entitled to review Mr. Dearing's files that still exist and reflect his personal thoughts and impressions, so plaintiff may respond to defendant's claim of lost evidence. Defendant was therefore ordered to produce any withheld documents reflecting Mr. Dearing's work product on this matter.

**\*2** [Doc. # 177 at ¶ 8.] Judge Bencivengo stayed production of Mr. Dearing's work product for 30 days in order to give B & D an opportunity to appeal the order. B & D has just taken that opportunity and filed a motion for reconsideration on September 4, 2007 [Doc. # 240]. B & D's motion is calendared for hearing by this Court on November 2, 2007.

In light of Judge Bencivengo's more recent order requiring production of Mr. Dearing's privileged documents, and the now-pending motion for reconsideration of that order, the Court finds moot Plaintiff's motion for reconsideration of its previous order overruling Plaintiff's objection to Judge Bencivengo's April 9, 2007 order. The Court finds that

this entire issue will be addressed, upon a complete and updated record that includes Judge Bencivengo's August 3, 2007 order, in the Court's forthcoming decision on B & D's pending motion for reconsideration. Accordingly, Plaintiff's motion is **DENIED** without prejudice as moot.

### II. Motion for Reconsideration of Bifurcation

On June 13, 2007, the Court held a hearing on B & D's motion for summary judgment of laches. The Court denied B & D's motion at that hearing and discussion then ensued over the possibility of setting an expedited bench trial on B & D's equitable defenses of laches and estoppel. At B & D's urging, the Court and the parties agreed to schedule this bench trial beginning on December 17, 2007. In a June 20, 2007 written order confirming the Court's decision from the June 13 hearing, the Court explained that the trial of equitable defenses could be bifurcated from the rest of the trial proceedings relating to infringement. [Doc. # 147 at 2-3.] Citing the Ninth Circuit case of *Danjaq LLC v. Sony Corp.* 263 F.3d 942 (9th Cir.2001), the Court explained that, in deciding these equitable defenses, it would need to determine whether there has been any showing of willful infringement on the part of Defendants that would act as a "counterdefense" to laches. The Court invited any party to make a motion for reconsideration of the decision to bifurcate the equitable portion of the trial if they felt that the Court's determination of the willfulness issue presented a problem for any subsequent jury trial proceedings.

On July 20, 2007, B & D accepted the Court's invitation and filed a motion for reconsideration of bifurcation. [Doc. # 171.] B & D explained that it had not appreciated that the Court itself would need to make a finding on willfulness, without the aid of a jury, in any bifurcated trial on equitable defenses. In light of this realization, and its desire to retain its full rights to a jury determination on willfulness, B & D withdrew its request for an expedited bench trial on its equitable defenses.

Plaintiff has opposed B & D's motion for reconsid-

Slip Copy                                                                                          Page 3
Slip Copy, 2007 WL 2696590 (S.D.Cal.)
**(Cite as: Slip Copy)**

eration arguing that there is no authority establish-
ing any right to a jury trial on willfulness and, to
the extent such a right exists, B & D has waived its
rights by continually requesting that the Court
schedule a short bench trial on laches before pro-
ceeding with the rest of the action.

**\*3** The Court finds that the right to a jury trial on
willfulness exists in a patent action that will be
tried to a jury. *See, e.g., Richardson v. Suzuki Mo-
tor Co.,* 886 F.2d 1226, 1250 (Fed.Cir.1989). Hav-
ing considered the submissions of the parties and
the record of these proceedings, the Court does not
find that B & D has knowingly waived its right to a
jury trial on willfulness. Moreover, the early bifurc-
ated trial on equitable defenses was scheduled by
this Court in an effort to accommodate B & D's re-
quest for an early determination of laches, which it
argued, if found, would greatly expedite the conclu-
sion of this matter. Having recognized that a laches
determination requires that this Court determine,
before any jury has considered the question, wheth-
er Defendants willfully infringed Plaintiff's patent,
B & D has withdrawn its request. The Court sees no
reason to push ahead with a bifurcated trial despite
B & D's express wishes.

The Court's recognition of the practical ramifica-
tions of the intertwinement of willfulness in any
laches determination was the impetus for the
Court's invitation to reconsider in its June 20, 2007
order. Having considered B & D's submission,
which was based upon the exact issues identified in
this Court's own order, the Court hereby **GRANTS**
B & D's motion. The bifurcated bench trial on
equitable defenses previously scheduled for
December 17, 2007 is hereby **VACATED,** along
with all pretrial proceedings associated with it, in-
cluding the November 26, 2007 pretrial conference.

### III. Motion to Stay Litigation Pending Reexamin-
ation

On August 3, 2007, all Defendants jointly filed a
motion for a stay of these proceedings. Defendants'
motion is based on B & D's pending request for
reexamination of Plaintiff's 184 Patent, which was

filed with the U.S. Patent and Trademark Office
("PTO") on July 30, 2007. The request for reexam-
ination challenges, *inter alia,* all 5 claims of the
184 Patent that are asserted in the present litigation.
The challenge is based on a number of prior art ref-
erences, almost all of which were apparently not
considered by the PTO in the prosecution of the
184 Patent.

Courts have inherent power to stay an action
pending conclusion of PTO reexamination proceed-
ings. *Ethicon, Inc. v. Quigg,* 849 F.2d
1422,1426-27 (Fed.Cir.1988). The decision whether
to grant or deny a motion to stay proceedings
pending PTO reexamination rests within the sound
discretion of the court. *See, e.g., Photoflex
Products, Inc. v. Circa 3 LLC,* No. C 04-03715
JSW, 2006 U.S. Dist. LEXIS 37743, at \*2-3
(N.D.Cal. May 24, 2006). There is a "liberal
policy" in favor of granting motions to stay pending
the outcome of PTO reexamination proceedings.
*ASCII Corp. v. STD Entertainment USA, Inc.,* 844
F.Supp. 1378, 1381 (N.D.Cal.1994).

In determining whether to stay litigation pending
reexamination by the PTO, courts generally con-
sider the following factors: (1) the stage of litiga-
tion, i.e., whether discovery is almost complete and
whether a trial date has been set; (2) whether a stay
would cause undue prejudice or present a clear dis-
advantage to the non-moving party; and (3) whether
a stay will simplify the issues in question and trial
of the case. *See, e.g., Xerox Corp. v. 3Com Corp.,*
69 F.Supp.2d 404, 406 (W.D.N.Y.1999).

**\*4** The Court finds that this litigation has not pro-
ceeded so far that it would be unjust to stay the ac-
tion. Although this action was originally filed about
a year ago, and the Court recognizes that substan-
tial amounts of discovery have already occurred,
the more relevant inquiry is whether discovery is
nearing completion-it is not.[FN1] For instance, Ma-
gistrate Judge Bencivengo recently granted the
parties permission to take an additional 10 depos-
itions per side. [*See* Doc. # 159 at 2.] No deadline
for the completion of fact discovery has even been
set. Moreover, the parties are just beginning to brief

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                   Page 4
Slip Copy, 2007 WL 2696590 (S.D.Cal.)
**(Cite as: Slip Copy)**

the preliminary issue of claim construction and, in accordance with the decision above to vacate the bifurcated bench trial on equitable defenses, no trial date is currently set for any aspect of this case. In addition, while the Court has already considered two motions for summary judgment, it previously put off consideration of two others until after claim construction, and Plaintiff has just filed a substantial summary judgment motion aimed at piercing Black & Decker's corporate veil. The Court anticipates that further summary judgment motions regarding infringement and patent validity will be filed once claim construction is complete. Thus, a substantial amount of resources will be employed by all parties and the Court even in advance of any eventual trial. *See, e.g., Broadcast Innovation, L.L.C. v. Charter Communications, Inc.,* No. 03-cv-2223-ABJ-BNB, 2006 U.S. Dist. LEXIS 46623, at *26-31 (D.Colo. July 11, 2006) (granting stay, in part, because of significant work remaining on motions for summary judgement, even though trial date was less than three months away).

> FN1. In reaching this determination, the Court has considered the surreply submitted by Plaintiff and, therefore, the pending ex parte request to file a surreply [Doc. # 201] is **GRANTED.**

Plaintiff claims Defendants delayed filing their request for reexamination to gain a tactical advantage over it. He claims that Defendants were aware of the prior art that they reference in their reexamination request over seven months ago, but purposely delayed so that the 184 Patent would expire during the reexamination process, thereby precluding Plaintiff from offering any amendments to the claims. Defendants respond that there was no intentional delay and that their decision to request reexamination was based, in part, on the Supreme Court decision in *KSR International Co. v. Teleflex Inc.,* ---U.S. ----, 127 S.Ct. 1727, 167 L.Ed.2d 705 (2007), which was only issued at the end of April. The Court is not convinced that Defendants employed any improper tactics in filing their request for reexamination. While Plaintiff is rightfully concerned that a reexamination in the twilight of his

patent puts him at a distinct disadvantage, he could have prevented this situation by filing suit many years ago, thereby allowing sufficient time for any reexamination to occur before the patent expired.

Therefore, Plaintiff's cognizable claims of prejudice if a stay should be entered basically boil down to his inconvenience in delaying final collection of any monetary award of royalties, assuming he ultimately wins. However, as the court recognized in *Broadcast,* the prejudice factor "is best summarized by one question: *do the Plaintiffs have an adequate remedy at law?*" 2006 U.S. Dist. LEXIS 46623, at *32. Just as in *Broadcast,* the answer here is that clearly Plaintiff does have an adequate remedy. Defendants point out, and Plaintiff has not disputed, that the 184 Patent will expire in February 2008 independent of reexamination. Given that a trial on the merits could not occur prior to that date, Plaintiff would not have been granted any injunctive relief by this Court. Therefore, his claim would be restricted to past monetary damages, which, with the addition of prejudgment interest, are fully capable of compensating Plaintiff. Unfortunately, reexamination can be a drawn out process, resulting in a significant delay in court proceedings. Protracted delay is always a risk inherent in granting a stay, yet courts continue to stay actions pending reexamination. The general prejudice of having to wait for resolution is not a persuasive reason to deny the motion for stay. An average delay for reexamination of approximately 18-23 months is especially inconsequential where Plaintiff himself waited as many as twelve years before bringing the present litigation. (*See* PTO Reexamination Statistics at Ex. B to Niro Decl.; Doc. # 180-3.)

**\*5** In addition, the Federal Circuit has recently confirmed that the PTO would not be bound in its reexamination by the determinations of this Court. *In re Trans Texas Holdings Corp.,* 2006-1599 and 2006-1600, 2007 U.S.App. LEXIS 19909, at *14-19 (Fed.Cir. Aug. 22, 2007). Because of this, the Court finds that not only is Plaintiff unlikely to be prejudiced in these proceedings by a stay pending the PTO reexamination, but Defendants would potentially be prejudiced by *failing* to enter a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                     Page 5
Slip Copy, 2007 WL 2696590 (S.D.Cal.)
**(Cite as: Slip Copy)**

stay. One court has explained this possibility ac-
cordingly:
Not only could the Court and the PTO reach con-
flicting determinations, but one possible scenario
could result in irreparable harm to [Defendant]: if
this Court finds that the [patent] is not invalid and
that [Defendant] has infringed it, and orders
[Defendant] to pay damages to [Plaintiff] for such
infringement, then [Defendant] would have no abil-
ity to recover those damages if at a later date the
PTO determined that the [ ] patent is invalid.

*Bausch & Lomb, Inc. v. Alcon Lab., Inc.,* 914
F.Supp. 951, 952 (W.D.N.Y.1996). The Court finds
such a possibility to be, at a minimum, a highly un-
desirable outcome.

Finally, the Court finds that the stay will result in
the simplification of issues in this case. As ex-
plained by the Federal Circuit, "[o]ne purpose of
the reexamination procedure is to eliminate trial of
[the issue of patent claim validity] (when the claim
is canceled) or to facilitate trial of that issue by
providing the district court with the expert view of
the PTO (when a claim survives the reexamination
proceeding)."*Gould v. Control Laser Corp.,* 705
F.2d 1340, 1342 (Fed.Cir.1983), *cert. denied,*464
U.S. 935, 104 S.Ct. 343, 78 L.Ed.2d 310 (1983).
The *Broadcast* court, elaborating on this point, ex-
plained:
Shifting the patent validity issue to the PTO has
many advantages, including:
1. All prior art presented to the Court will have
been first considered by the PTO, with its particular
expertise.
2. Many discovery problems relating to prior art
can be alleviated by the PTO examination.
3. In those cases resulting in effective invalidity of
the patent, the suit will likely be dismissed.
4. The outcome of the reexamination may encour-
age a settlement without the further use of the
Court.
5. The record of reexamination would likely be
entered at trial, thereby reducing the complexity
and length of the litigation.
6. Issues, defenses, and evidence will be more eas-
ily limited in final pretrial conferences after a reex-

amination.
7. The cost will likely be reduced both for the
parties and the Court.

2006 U.S. Dist. LEXIS 46623, at *9-10 (quoting
*Emhart Indus., Inc. v. Sankyo Seiki Mfg. Co.,* 3
U.S.P.Q.2d 1889, 1890 (N.D.Ill.1987)).

The Court believes that it will benefit from the
PTO's evaluation of how the previously uncon-
sidered prior art references impact the claims of the
patent-in-suit. The PTO's expert evaluation is likely
to be of assistance not only as to the issues of valid-
ity, but its understanding of the claims is also likely
to aid this Court in the preliminary process of claim
construction.

**\*6** The Court finds that, especially in this case, the
reexamination process has the potential to signific-
antly narrow the issues for trial because of the im-
pending expiration of the 184 Patent. While the
parties have argued at length about exactly how this
additional variable affects the calculation of the
likely outcome of reexamination, the Court need
not resolve this dispute to reach the proper conclu-
sion. It is enough to note that when reexamination
is requested by a third party, as in this case, all
claims are confirmed only 29% of the time. (*See*
PTO Reexamination Statistics at Ex. B to Niro De-
cl.; Doc. # 180-3.) Since no amendments can be
offered to an expired patent, there is obviously a
significant likelihood that the validity of the claims
at issue in this action will be affected by the reex-
amination process.FN2

> FN2. Plaintiff has argued that the PTO is
> unlikely to grant reexamination precisely
> because the 184 Patent will expire soon.
> However, Plaintiff failed to produce any
> evidence to support this contention.
> Moreover, even if Plaintiff is correct, and
> the PTO fails to grant reexamination (a de-
> cision which should issue no later than Oc-
> tober 30, 2007), this Court would immedi-
> ately lift the stay and these proceedings
> would continue-a relatively insignificant
> 2-month delay being all that would result.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

In addition, the Court expects that the reexamination process will not only aid the Court in these proceedings, but should also redound to the benefit of the parties, both Defendants and Plaintiff. As the *Broadcast* court explained in its discussion of the possibility of prejudice from entering a stay:

If the PTO does not invalidate or otherwise alter the claims of the [ ] patent, the Plaintiffs' legal remedy remains unaffected .... Moreover, if the claims are narrowed, both sets of parties will have benefitted by avoiding the needless waste of resources before this Court, and again, the Plaintiffs will be able to pursue their claim for money damages at trial. Finally, if the claims are strengthened, the Plaintiffs' position will be as well, and their likelihood of monetary damages will increase. *See, e.g., Motson,* 2005 U.S. Dist. LEXIS, 2005 WL 3465664 at *1 ("[I]f the PTO upholds the validity of plaintiff's patent, 'the plaintiff's rights will only be strengthened, as the challenger's burden of proof becomes more difficult to sustain.'") (quoting *Pegasus Dev. Corp., 2003 U.S. Dist. LEXIS 8052, 2003 WL 21105073 at *2*).

2006 U.S. Dist. LEXIS 46623, at *32-33. Accordingly, the Court finds that a stay is appropriate to avoid the risk of unnecessary litigation and to permit the clarification of issues before this Court.

Therefore, Defendants' motion to stay this litigation is **GRANTED IN PART** and **DENIED IN PART.** With the exception of two pending motions, all proceedings are hereby stayed pending the PTO's reexamination of the 184 Patent. The Court will continue to hear Plaintiff's pending motion for entry of default against Defendant Porter-Cable Corporation [Doc. # 182], which is calendared for hearing on October 12, 2007. As was discussed above in Section I, the Court will also continue to hear B & D's pending motion for reconsideration of Magistrate Judge Bencivengo's August 3, 2007 order regarding production of Dennis Dearing's attorney work product [Doc. # 240], which is calendared for hearing on November 2, 2007. The Clerk is directed to **VACATE** all scheduled discovery hearings, as well as the claim construction hearing previously set for November 19, 2007. All hearing

dates will be reset, to the extent appropriate, once the stay of these proceedings has been lifted.

*7 Defendants are ordered to file a notice informing the Court of the PTO's decision on the pending application for reexamination within 10 days of receipt of such decision. If the PTO declines B & D's request to reexamine the 184 Patent, the Court will immediately lift the stay and recalendar all vacated hearing dates. If, however, the PTO approves reexamination, this stay will remain in place pending some resolution of those proceedings. During the pendency of the reexamination, Defendants will be required to file a notice every 6 months apprising the Court of any change in the status of those proceedings.

### *IV. Motion for Partial Summary Judgment*

On August 30, 2007, Plaintiff filed a motion for partial summary judgment piercing the corporate veils of the Black & Decker Defendants, or in the alternative, holding them to be a single enterprise for purposes of patent infringement liability. [Doc. # 204.] The motion is presently calendared for hearing on October 26, 2007. In light of the Court's entry of a stay of these proceedings pending the PTO patent reexamination, the Court finds Plaintiff's motion to be premature. Accordingly, the Court hereby **DENIES** Plaintiff's motion without prejudice.[FN3] As the Court is aware of the substantial volume of Plaintiff's motion, he is invited to refile this motion once the stay has been lifted by simply filing a short notice of motion which incorporates by reference his earlier filing.

> FN3. Plaintiff's pending motion to file confidential documents under seal in support of the motion for partial summary judgment [Doc. # 204-5] is also **DENIED** as moot.

**IT IS SO ORDERED.**

S.D.Cal.,2007.
Sorensen ex rel. Sorensen Research and Development Trust v. Black and Decker Corp.
Slip Copy, 2007 WL 2696590 (S.D.Cal.)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 7
Slip Copy, 2007 WL 2696590 (S.D.Cal.)
**(Cite as: Slip Copy)**


END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.