J. CHRISTOPHER JACZKO (149317)
ALLISON H. GODDARD (211098)
JACZKO GODDARD LLP
4401 Eastgate Mall
San Diego, CA 92121
Telephone:    (858) 404-9205
Facsimile:    (858) 225-3500

DALE LISCHER (*Admitted Pro Hac Vice*)
ELIZABETH G. BORLAND (*Admitted Pro Hac Vice*)
KERRI A. HOCHGESANG (*Admitted Pro Hac Vice*)
SMITH, GAMBRELL & RUSSELL, LLP
Promenade II, Suite 3100
1230 Peachtree St. N.E.
Atlanta, GA  30309
Telephone:    (404) 815-3500
Facsimile:    (404) 685-6945

Attorneys for Defendant
GIANT INTERNATIONAL (USA) LTD.

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENS ERIK SORENSEN, as Trustee of SORENSEN RESEARCH AND DEVELOPMENT TRUST,<br><br>       Plaintiff,<br><br>v.<br><br>GIANT INTERNATIONAL (USA) LTD., a Delaware corporation, and DOES 1-10,<br><br>       Defendants.<br>_____<br><br>GIANT INTERNATIONAL (USA) LTD., a Delaware corporation,<br><br>      Cross-Complainant,<br><br>v.<br><br>JENS ERIK SORENSEN, as Trustee of SORENSEN RESEARCH AND DEVELOPMENT TRUST,<br><br>      Cross-Defendant.<br>_____ | No. 07-CV-02121-BTM-CAB<br><br>**REPLY IN SUPPORT OF DEFENDANT'S MOTION TO STAY PENDING OUTCOME OF REEXAMINATION PROCEEDINGS**<br><br>***NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT***<br><br>Date:    February 8, 2008<br>Time:    11:00 am<br>Courtroom 15 - 5th Floor |

1    **I.    INTRODUCTION**

2         Defendant Giant International (USA) Ltd. ("Giant USA") has shown in its initial Motion that

3    ***all*** of the three factors that courts consider when ruling on whether to grant a motion to stay

4    litigation pending the outcome of reexamination of a patent – 1) the stage of the litigation;

5    2) whether a stay will prejudice the non-moving party; and 3) whether a stay will simplify the issues

6    – support a stay in this case.  To move forward with this case while a reexamination of Plaintiff's

7    asserted patent is pending simply makes no sense and would be very likely to waste substantial party

8    and judicial resources.

9         Moreover, this Court has already found that a stay of infringement litigation involving the

10   '184 Patent is appropriate pending reexamination of the Patent in *Sorensen v. Black & Decker Corp.*,

11   No. 06cv1572, 2007 WL 2696590 (S.D. Cal. Sept. 10, 2007) (Ex. A hereto).  The United States

12   District Court for the Northern District of California also made the very same finding in yet another

13   of Plaintiff's cases involving the very same patent.  *See Sorensen v. Digital Networks N. Am., Inc.*,

14   No. C 07-05568, 2008 WL 152179 (N.D. Cal. Jan. 16, 2008) (Ex. B hereto).[1]

15        Despite this established pattern of staying Plaintiff's cases pending reexamination,  Plaintiff

16   attempts to avoid a stay by pressing two new arguments here: 1) that he will be prejudiced by a stay

17   because evidence ***could potentially*** be lost and because he ***could potentially*** be precluded from

18   amending his complaint under FED. R. CIV. P. 15 (Pl.'s Opp'n to Def.'s Mot. to Stay at 4-11); and

19   2) that Giant USA has not shown that it will prejudiced if a stay is ***not*** issued (*id*. at 11-14).  Both

20   arguments are without merit.  Therefore, this Court should follow the *Black & Decker* and *Digital*

21   *Networks* decisions and grant Giant USA's Motion to Stay.

22   **II.    ARGUMENT AND CITATION OF AUTHORITIES**

23   **A.    The stage of the litigation supports granting a stay.**

24        Giant USA has already shown that because this case is only a few months old, and because

25   no discovery has yet been conducted, the stage of the litigation factor ***strongly*** weighs in favor of

---

26

27   [1]  Given that Plaintiff has filed at least nine other cases asserting infringement of the same patent in this District and/or
     the Northern District of California since December 1, 2007, it is highly likely that this Court and the Northern District of
28   California will be faced with this same issue repeatedly.  *See* Plaintiff's Second Amended Notice of Related Cases, filed
     January 18, 2008.

this Court's granting a stay pending reexamination.  (Def.'s Mem. Supp. Mot. to Stay at 3.)   For example, the Northern District of California granted a stay in *Digital Networks*  in part because: 1) discovery had not yet begun; 2) the court had not set any deadlines regarding discovery, motions, or trial; and 3) neither party had invested any significant expense in the litigation.  *Digital Networks*, 2008 WL 152179 at *2.  Those points all apply equally here.

In addition, this Court granted a stay in *Black & Decker* even though that case had been pending for a full year and substantial amounts of discovery had already been conducted.  *Black & Decker*, 2007 WL 2696590 at *4.  If a stay was appropriate in *Black & Decker,* there is no question that a stay must be appropriate here.  Perhaps because this point is obvious, Plaintiff notably omits *any* discussion of the "stage of the litigation" factor in his brief.  However, a party cannot simply ignore those factors that do not support its argument and expect to prevail.

**B.    Plaintiff's request for a "partial" stay does not alter the fact that a stay will simplify the issues presented in this litigation.**

Giant USA has already shown that, as this Court found in *Black & Decker,* there are a *number* of reasons why a stay will simplify the issues in this case.  (Def.'s Mem. Supp. Mot. to Stay at 4-5.)  Plaintiff apparently concedes this point, but attempts to mitigate its impact by arguing for a "partial" stay.  (Pl.'s Opp'n to Def.'s Mot. to Stay at 14.)  Plaintiff made exactly the same request for a "partial" stay in *Digital Networks*, and the request was flatly ignored.  *Digital Networks*, 2008 WL 152179 at *2 (summarily concluding that "a stay will simplify the issues and streamline the trial, thereby reducing the burden on, and preserving the resources of both the parties and the Court.").  Such denial was for good reason: allowing limited discovery to go forward while a reexamination is pending would be meaningless at best, and a complete waste of resources at worst.  Even assuming that *some* claims from the '184 Patent will survive the reexamination, the parties will have no idea which claims those will be until the reexamination is complete.  *See, e.g.*, *Target Therapeutics, Inc. v. SciMed Life Sys., Inc.*, No. C-94-20775, 1995 WL 20470 *2 (N.D. Cal. Jan. 13, 1995) (Ex. C hereto) ("Absent a stay, the parties may end up conducting a significantly wider scope of discovery than necessary.").

1    Furthermore, the findings of the PTO will have a significant impact on how any surviving

2    claims are to be construed.  Because the parties cannot take any positions regarding claim

3    construction, infringement, or invalidity until the reexamination is decided, discovery on those issues

4    would only have to be *revisited* after the reexamination is concluded.  And that assumes that *some*

5    claims will survive.  If *none* survive, then *any* discovery that has been conducted in the interim will

6    have been a complete waste of the parties' – and the Court's – time and resources.  Thus, Plaintiff's

7    proposed "partial" stay thus carries severe risk, with no reward.

8    **C.    Prejudice.**

9    Because the "stage of the litigation" and "simplification" factors  strongly favor Giant USA's

10   Motion to Stay, Plaintiff understandably stakes his claim on the "prejudice" factor.  However,  there

11   are several hurdles for Plaintiff to overcome on this point.  As the Northern District of California

12   noted in *Digital Networks*, granting a stay does *not* typically cause the non-moving party prejudice

13   where, as here, the party has not invested substantial expense and time in the litigation.  *Digital*

14   *Networks*, 2008 WL 152179 at *2.  The court reasoned that in cases where the party moving for the

15   stay did not seek reexamination on the eve of trial after protracted discovery, but instead quickly

16   moved to stay based on a reexamination that was filed by a third-party *before* the lawsuit even

17   began, the non-moving party's claim of "tactical disadvantage" was circumspect.  *Id*.  As the court

18   summarized, "the delay inherent to the reexamination process does not constitute, by itself, undue

19   prejudice."  *Id*.  Those considerations should apply with equal force here, where Giant USA moved

20   quite early in the case to stay based on a reexamination filed before the case was even filed.

21   Plaintiff attempts to circumvent these hurdles by arguing that he will be prejudiced in a

22   number of ways.  Some can be summarily addressed.  For example, Plaintiff's attempt to re-litigate

23   this Court's *Black & Decker* decision here (Pl.'s Opp'n to Def.'s Mot. to Stay at 8-10) is

24   inappropriate.  Moreover, to the extent that Plaintiff contends that the *Black & Decker* case will be

25   ready for claim construction as soon as the '184 Patent reexamination is completed, unless discovery

26   in *this case* stalls it (Pl.'s Opp'n to Def.'s Mot. to Stay at 10-11), there appears to be a disconnect

27   between Plaintiff and this Court.  In *Black & Decker*, this Court found that there is still *significant*

28   discovery to be taken.  *See Black & Decker*, 2007 WL 2696590 at *4 ("[T]he more relevant inquiry

4                                    Case No. 07-CV-02121-BTM-CAB

is whether discovery is nearing completion – it is not.").[2]  Plaintiff's other contentions of alleged

prejudice -- alleged "spoliation of evidence" and "Rule 15" prejudice – are addressed below.

### 1.    Plaintiff's alleged "spoliation of evidence" prejudice is purely speculative.

Plaintiff's primary allegation of prejudice is one of *potential* spoliation of evidence.  (Pl.'s

Opp'n to Def.'s Mot. to Stay at 4-7.).[3]  Plaintiff asserts: "if a stay is granted the intervening time

*will* result in the loss of crucial, relevant evidence." *Id*. at 4 (emphasis added).  However,  Plaintiff

fails to cite a *single* fact to support this bold prediction, and does not even *hint* that Giant USA has

failed to preserve evidence in this case, or that it will fail to do so in the future.[4]  Thus, contrary to

Plaintiff's assertions, this is not a case like *Telemac*, in which the court held that "*[Defendant's]*

*failure to preserve individual records suggests* that further delay could lead to further loss of

information."  *Telemac Corp. v. Teledigital, Inc.*, 450 F. Supp.2d 1107, 1111 (N.D. Cal. 2006)

(emphasis added).  Absent *any* evidence of  prior bad conduct, no court should simply *assume* that a

party will destroy evidence (any more than a court should assume that a witness will perjure

himself).   Hence,  Plaintiff's  spoliation  contention  amounts  to  nothing  more  than  unsupported

conjecture, and is insufficient to avoid a stay.  *See ASCII Corp. v. STD Entm't USA, Inc.*, 844 F.

Supp. 1378, 1381 (N.D. Cal. 1994) ("Pure conjecture on the part of counsel is not enough.").

Furthermore,  there  is  a  very  good  reason  why  mere  speculation  that  evidence  *could*

*potentially* be destroyed if a stay is granted (untethered to any previous destruction of evidence) is

not enough to deny a stay – because the mere *possibility* of spoliation exists in *every* case.  If, as

Plaintiff would have it, the mere *possibility* of spoliation were enough to preclude a court from

---

[2] On a related note, Plaintiff's request that discovery in this case be allowed to achieve "procedural parity" with the *Black & Decker* case (Pl.'s Opp'n to Def.'s Mot. to Stay at 10-11) is simply a reiteration of his "partial" stay request in different words.  As a result, it suffers from the same severe risks, with no reward, as does the "partial" stay request, as outlined in Section II(B).

[3] Plaintiff's arguments regarding how a stay would allegedly interfere with its ability to file a motion under 35 U.S.C. § 295 likewise have no merit and are essentially the same arguments as those alleging prejudice for spoliation.  If Plaintiff believes that it made "reasonable efforts pre-litigation" to obtain information about the manufacturing processes used to make the accused products, Plaintiff would certainly be able to file a motion under § 295 after the reexamination is concluded and rely on those prelitigation efforts in support of the motion.

[4] In support of the bold assertion that spoliation *will* occur in this case, Plaintiff argues that this Court may not be able to compel discovery from certain parties in China.  (Pl.'s Opp'n to Def.'s Mot. to Stay at 5.)  Even if true, this point is irrelevant.  Plaintiff's ability to compel discovery from parties outside of this Court's jurisdiction will be the same tomorrow or two years from now.  A stay will have no effect on this issue.

Case No. 07-CV-02121-BTM-CAB

granting a stay pending reexamination, then *no* stays would *ever* be granted.  Fortunately, courts have long held that "there is a liberal policy in favor of granting motions to stay proceedings pending the outcome of USPTO reexamination or reissuance proceedings."  *E.g.*, *ASCII*, 844 F. Supp. at 1381.  Plaintiff's proposed rule would stand this policy on its head.

Finally, Plaintiff's alleged fears of "spoliation" are misplaced because Giant is obligated under *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212 (S.D.N.Y. 2003), to preserve relevant documents.  If Giant were to fail to preserve such documents, it would be subject to significant sanctions.

### 2.    Plaintiff's alleged "Rule 15" prejudice is contrary to law.

Plaintiff also contends that he will be prejudiced by a stay because he will be precluded from amending his complaint under FED. R. CIV. P. 15.  (Pl.'s Opp'n to Def.'s Mot. to Stay at 7-8.)  This speculative concern is ameliorated, however, by the numerous decisions that have allowed parties to amend a complaint under FED. R. CIV. P. 15 after a court-imposed stay had been lifted.  *See, e.g.*, *Int'l Union of Bricklayers & Allied Craftsmen Local No. 5 v. Hudson Valley Dist. Council Bricklayers & Allied Craftsmen Joint Benefit Funds*, 162 F.R.D. 17, 22-23 (SDNY 1995) (allowing amendment of complaint following a stay because the plaintiff had not unduly delayed and because there was no prejudice to the defendants); *see also*, *e.g.*, *Forbes v. Eagleson*, 183 F.R.D. 440, 442 (E.D. Pa. 1998) (same); *Kamakazi Music Corp. v. Robbins Music Corp.*, 534 F. Supp. 69, 79 (SDNY 1982) (same).  These decisions confirm what common sense would suggest – no court should preclude Plaintiff from amending his complaint simply because he complied with the terms of a court-issued stay.[5]

### 3.    Plaintiff's speculation that any delay now will significantly prejudice his case is dubious, given that Plaintiff waited over *three years* to bring this lawsuit.

Finally, any alleged prejudice that Plaintiff could suffer as a result of a stay was caused by Plaintiff's delay in filing this suit.  Plaintiff's counsel first contacted Giant USA regarding the potential infringement claims on October 21, 2004.  (Compl. ¶¶ 23-28.)  However, Plaintiff did not

---

[5] Similarly, a stay also tolls any applicable statutes of limitations.  *See, e.g.*, *Selph v. Nelson, Reabe and Snyder, Inc.*, 966 F.2d 411, 413 (8th Cir. 1992) ("A stay tolls the statute of limitations, which avoids the risk that the [plaintiff's] cause of action will be time-barred.").

file the complaint in this case until October 31, 2007.[6]  Numerous courts have held that delay by a patent owner in initiating litigation weighs ***against*** denying a stay.  *See, e.g.*, *Hewlett-Packard Co. v. Acuson Corp.*, No. C-93-0808, 1993 WL 149994 *2 (N.D. Cal. May 5, 1993) (Ex. D hereto) (stating that the patentee's delay in seeking to protect its patented interests weighed "heavily" against denying a stay); *Ingro v. Tyco Indus., Inc.*, 227 U.S.P.Q. 69, 71 (N.D. Ill. 1985) (Ex. E hereto) ("The court agrees that especially in light of plaintiff's own delay in initiating litigation, a stay pending completion of reexamination proceedings . . . will constitute neither undue nor unreasonable delay.").  If Plaintiff truly believed that delay would result in the spoliation of evidence, or would cause problems under Rule 15, he could have initiated this litigation three years earlier.  Instead Plaintiff waited over three years to file this suit, but now claims that time is of the essence.

**4.    Because there is no prejudice to Sorensen if a stay is issued, the alleged lack of prejudice to Giant USA if a stay is *not* issued is irrelevant.**

As shown above, Plaintiff has alleged ***no*** legitimate reason why his case would be prejudiced if this Court issues a stay pending reexamination of the '184 Patent.  To mask this failure, Plaintiff attempts to shift the burden to Giant USA to show why it would be prejudiced if a stay is ***not*** issued.  (Pl.'s Opp'n to Def.'s Mot. to Stay at 11-14.)  This is backwards – the pertinent question is of prejudice to the non-moving party, not the moving party.  *See, e.g.*, *Digital Networks*, 2008 WL 152179 at *2 ("In determining whether to grant a stay, courts also consider any resulting undue prejudice ***on the nonmoving party.***") (emphasis added).  The language cited by Plaintiff from *IMAX Corp. v. In-Three, Inc.*, 385 F. Supp.2d 1030, 1032 (C.D. Cal. 2005), is not to the contrary.  (Pl.'s Opp'n to Def.'s Mot. to Stay at 11.)  As the court stated in *IMAX*: "The suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, ***if*** there is even a fair possibility that the stay for which he prays will work damage to someone else."  *IMAX*, 385 F. Supp. 2d at 1032 (emphasis added).  This means that ***once*** a non-moving party has demonstrated that it will be prejudiced by a stay, a court should then balance the extent of that prejudice against the prejudice

---

[6] Plaintiff's claim that the "delay between the initial infringement contact and lawsuit filing" that was present in the *Black & Decker* case was "not present in the Giant case" (Pl.'s Opp'n to Def.'s Mot. to Stay at 9) is simply not true.

to the moving party if a stay is not granted.  But where, as here, the non-moving party has shown **no** prejudice, the second part of the balancing test is moot.

Moreover, even though the issue is moot, it is worth noting that Giant USA will suffer **significant** prejudice if a stay is not granted in this case.  As outlined in Section II(B) regarding Plaintiff's request for a "partial" stay, if discovery is allowed to go forward now, such discovery will, at best, need to be repeated once the reexamination is completed, and will, at worst, be rendered worthless if the '184 Patent is invalidated.  The prejudice to Giant USA under **either** scenario is substantial.

To counter this common-sense conclusion, Plaintiff contends that Giant USA is somehow estopped from pointing out this prejudice because of the boilerplate language in Giant USA's compulsory counterclaim in which Giant USA requested "prompt" adjudication of the instant controversy.  (Pl.'s Opp'n to Def.'s Mot. to Stay at 12-14.)  This is a non-starter.  There is nothing inconsistent in asking that an infringement action be adjudicated "promptly" and asking that it be stayed pending a reexamination that could invalidate the entire patent (which would, of course, offer a quite prompt and efficient resolution).[7]  In the event that the '184 Patent survives the pending reexamination and this case moves forward, Giant USA will **still** want a prompt adjudication of the questions of infringement and invalidity.  But there is nothing "prompt" about forcing Giant USA to conduct discovery that is piecemeal, repetitive, or unnecessary.

///

///

///

///

///

///

---

[7] This case is thus distinguishable from *IMAX*, in which the Court based its decision to deny a stay in part on the fact that both parties had averred that absent **immediate** relief – in the form of preliminary injunctions – both would be irreparably harmed.  *IMAX*, 385 F. Supp.2d at 1033.  No such dire circumstances are present here.  A request for "prompt" adjudication is not the same as a plea for "immediate" relief.  Nor are any of the other factors that influenced the court's decision in *IMAX* – the existence of counterclaims unrelated to patent infringement, the fact that "much" discovery had already been conducted – present here.

**III.    CONCLUSION**

This Court and the district court for the Northern District of California have already stayed related infringement suits filed by Plaintiff pending reexamination of the '184 Patent.  To the extent that the facts of this case are different from those of *Digital Networks* and *Black & Decker*, it is only because the reasons for granting a stay are ***stronger*** here.  Accordingly, Giant USA's Motion to Stay should be granted and this case stayed pending the outcome of the reexamination.  In addition, given that this Court has already granted a stay in *Black & Decker*, Giant believes that oral argument is not necessary, but defers to the Court's judgment on the issue.

Dated:    February 1, 2008                    JACZKO GODDARD LLP

                                              SMITH, GAMBRELL & RUSSELL, LLP


                                              By:    _____s/Allison H. Goddard_____
                                                     Allison H. Goddard
                                                     Attorneys for Defendant GIANT
                                                     INTERNATIONAL (USA) LTD.

*Sorensen v. Giant International (USA) Ltd.*

**USDC Case No. 07cv02121 BTM (CAB)**


**Certificate of Service**

        The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served this 1st day of February, 2008, with a copy of this document via the Court's CM/ECF system.  I certify that all parties in this case are represented by counsel who are CM/ECF participants.  Any other counsel of record will be served by electronic mail, facsimile transmission, and/or first class mail on the following business day.


                    /s/  Allison H. Goddard

Case No. 07-CV-02121-BTM-CAB

# Exhibit A



Slip Copy                                                                                                                Page 1
Slip Copy, 2007 WL 2696590 (S.D.Cal.)
**(Cite as: Slip Copy)**

Sorensen ex rel. Sorensen Research and
Development Trust v. Black and Decker Corp.
S.D.Cal.,2007.
Only the Westlaw citation is currently available.
United States District Court,S.D. California.
Jens Erik SORENSEN, as Trustee of SORENSEN
RESEARCH AND DEVELOPMENT TRUST,
Plaintiff,
v.
The BLACK AND DECKER CORPORATION, et
al., Defendants.
No. 06cv1572 BTM (CAB).

Sept. 10, 2007.

James Michael Kaler, Law Offices of James M. Kaler,
Melody A. Kramer, Kramer Law Office, Patricia A.
Shackelford, Zelkind and Shackelford, San Diego,
CA, for Plaintiff.
Dina M. Hayes, Gregory P. Casimer, Raymond P.
Niro, Jr., Niro, Scavone, Haller and Niro, Chicago, IL,
John Christopher Jaczko, Allison H. Goddard, Jaczko
Goddard, Kenneth S. Klein, Foley and Lardner LLP,
San Diego, CA, Robert L. Binder, Foley & Lardner
LLP, Milwaukee, WI, for Defendants.

**ORDER:**

**(1) DENYING PLAINTIFF'S MOTION FOR
RECONSIDERATION OF DENIAL OF
OBJECTIONS TO MAGISTRATE JUDGE'S
ORDER OF APRIL 9, 2007 AS MOOT [Doc. #
163];**

**(2) GRANTING DEFENDANTS' MOTION FOR
RECONSIDERATION OF THE COURT'S
JUNE. 20, 2007 ORDER RE BIFURCATION
[Doc. # 171];**

**(3) GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTION TO STAY [Doc.
# 178];**

**and**

**(4) DENYING PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT AS
PREMATURE [Doc. # 204]**

BARRY TED MOSKOWITZ, United States District
Judge.

***I. Motion for Reconsideration of Denial of
Objections to Magistrate Judge's Order***

**\*1** On April 9, 2007, Magistrate Judge
Bencivengo issued an order in which she granted in
part and denied in part Plaintiff's motion to compel
further responses to discovery. In accordance with 28
U.S.C. § 636(b)(1)(A) and Fed.R.Civ.P. 72(a),
Plaintiff filed an objection to that ruling, arguing that
it was both clearly erroneous and contrary to law. In an
order entered June 14, 2007, the Court overruled
Plaintiff's objection without prejudice. The Court
found that the Magistrate Judge's determinations
regarding the Black & Decker Defendants' waiver of
the attorney-client privilege, and the applicability of
Patent Local Rule 2.5(d), were neither clearly
erroneous nor contrary to law, on the record before the
Court. However, the Court was unable to determine at
that time whether, and to what extent, the Black &
Decker Defendants ("B & D") intended to rely upon
the death of Dennis Dearing to provide the requisite
showing of prejudice in support of any laches and/or
equitable estoppel defenses. Therefore, Plaintiff was
granted leave to serve an interrogatory upon B & D,
which stated: "Set forth, in detail, all prejudice to
Defendants that resulted from the death of Dennis
Dearing in regard to this case."To the extent Plaintiff
believed that B & D's response to the interrogatory
indicated that this Court's determination regarding
waiver of the attorney-client privilege was in error, it
was invited to move for reconsideration of the
decision at that time.

On July 11, 2007, B & D responded to Plaintiff's
interrogatory setting forth the prejudice that resulted
from the death of its former in-house counsel Dennis
Dearing. The prejudice identified included the
inability to have Mr. Dearing testify regarding his
communications in the mid-1990s pertaining to Mr.
Jens Ole Sorensen's claims of infringement of the '184
Patent. These communications included discussions
directly with Mr. Sorensen and his representatives, as
well as with John Schiech, Black & Decker's business
manager responsible for making all decisions
concerning the matter. B & D also indicated that it was

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

prejudiced because it could not present Mr. Dearing as a witness to defend against Plaintiff's charge of willful infringement.

On July 12, 2007, Plaintiff filed the present motion to reconsider this Court's previous ruling on the basis of the new evidence presented in B & D's interrogatory response. The motion was calendared for hearing, without oral argument, on August 10, 2007. However, while the motion was pending, Magistrate Judge Bencivengo reconsidered her earlier ruling in light of B & D's interrogatory response. On August 3, 2007, Judge Bencivengo issued her "Order Following Discovery Conference on July 26, 2007" in which she ruled:

Since the defendant is affirmatively relying upon the death of Mr. Dearing to support his defense of laches, the plaintiff is entitled to review Mr. Dearing's files that still exist and reflect his personal thoughts and impressions, so plaintiff may respond to defendant's claim of lost evidence. Defendant was therefore ordered to produce any withheld documents reflecting Mr. Dearing's work product on this matter.

**\*2** [Doc. # 177 at ¶ 8.] Judge Bencivengo stayed production of Mr. Dearing's work product for 30 days in order to give B & D an opportunity to appeal the order. B & D has just taken that opportunity and filed a motion for reconsideration on September 4, 2007 [Doc. # 240]. B & D's motion is calendared for hearing by this Court on November 2, 2007.

In light of Judge Bencivengo's more recent order requiring production of Mr. Dearing's privileged documents, and the now-pending motion for reconsideration of that order, the Court finds moot Plaintiff's motion for reconsideration of its previous order overruling Plaintiff's objection to Judge Bencivengo's April 9, 2007 order. The Court finds that this entire issue will be addressed, upon a complete and updated record that includes Judge Bencivengo's August 3, 2007 order, in the Court's forthcoming decision on B & D's pending motion for reconsideration. Accordingly, Plaintiff's motion is **DENIED** without prejudice as moot.

## II. Motion for Reconsideration of Bifurcation

On June 13, 2007, the Court held a hearing on B & D's motion for summary judgment of laches. The Court denied B & D's motion at that hearing and discussion then ensued over the possibility of setting

an expedited bench trial on B & D's equitable defenses of laches and estoppel. At B & D's urging, the Court and the parties agreed to schedule this bench trial beginning on December 17, 2007. In a June 20, 2007 written order confirming the Court's decision from the June 13 hearing, the Court explained that the trial of equitable defenses could be bifurcated from the rest of the trial proceedings relating to infringement. [Doc. # 147 at 2-3.] Citing the Ninth Circuit case of *Danjaq LLC v. Sony Corp.,* 263 F.3d 942 (9th Cir.2001), the Court explained that, in deciding these equitable defenses, it would need to determine whether there has been any showing of willful infringement on the part of Defendants that would act as a "counterdefense" to laches. The Court invited any party to make a motion for reconsideration of the decision to bifurcate the equitable portion of the trial if they felt that the Court's determination of the willfulness issue presented a problem for any subsequent jury trial proceedings.

On July 20, 2007, B & D accepted the Court's invitation and filed a motion for reconsideration of bifurcation. [Doc. # 171.] B & D explained that it had not appreciated that the Court itself would need to make a finding on willfulness, without the aid of a jury, in any bifurcated trial on equitable defenses. In light of this realization, and its desire to retain its full rights to a jury determination on willfulness, B & D withdrew its request for an expedited bench trial on its equitable defenses.

Plaintiff has opposed B & D's motion for reconsideration arguing that there is no authority establishing any right to a jury trial on willfulness and, to the extent such a right exists, B & D has waived its rights by continually requesting that the Court schedule a short bench trial on laches before proceeding with the rest of the action.

**\*3** The Court finds that the right to a jury trial on willfulness exists in a patent action that will be tried to a jury. *See, e.g., Richardson v. Suzuki Motor Co.,* 886 F.2d 1226, 1250 (Fed.Cir.1989). Having considered the submissions of the parties and the record of these proceedings, the Court does not find that B & D has knowingly waived its right to a jury trial on willfulness. Moreover, the early bifurcated trial on equitable defenses was scheduled by this Court in an effort to accommodate B & D's request for an early determination of laches, which it argued, if found, would greatly expedite the conclusion of this matter. Having recognized that a laches determination requires that this Court determine, before any jury has

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                Page 3
Slip Copy, 2007 WL 2696590 (S.D.Cal.)
**(Cite as: Slip Copy)**

considered the question, whether Defendants willfully infringed Plaintiff's patent, B & D has withdrawn its request. The Court sees no reason to push ahead with a bifurcated trial despite B & D's express wishes.

The Court's recognition of the practical ramifications of the intertwinement of willfulness in any laches determination was the impetus for the Court's invitation to reconsider in its June 20, 2007 order. Having considered B & D's submission, which was based upon the exact issues identified in this Court's own order, the Court hereby **GRANTS** B & D's motion. The bifurcated bench trial on equitable defenses previously scheduled for December 17, 2007 is hereby **VACATED,** along with all pretrial proceedings associated with it, including the November 26, 2007 pretrial conference.

### III.   Motion to Stay Litigation Pending Reexamination

On August 3, 2007, all Defendants jointly filed a motion for a stay of these proceedings. Defendants' motion is based on B & D's pending request for reexamination of Plaintiff's '184 Patent, which was filed with the U.S. Patent and Trademark Office ("PTO") on July 30, 2007. The request for reexamination challenges, *inter alia,* all 5 claims of the '184 Patent that are asserted in the present litigation. The challenge is based on a number of prior art references, almost all of which were apparently not considered by the PTO in the prosecution of the '184 Patent.

Courts have inherent power to stay an action pending conclusion of PTO reexamination proceedings. *Ethicon, Inc. v. Quigg,* 849 F.2d 1422,1426-27 (Fed.Cir.1988). The decision whether to grant or deny a motion to stay proceedings pending PTO reexamination rests within the sound discretion of the court. *See, e.g., Photoflex Products, Inc. v. Circa 3 LLC,* No. C 04-03715 JSW, 2006 U.S. Dist. LEXIS 37743, at *2-3 (N.D.Cal. May 24, 2006). There is a "liberal policy" in favor of granting motions to stay pending the outcome of PTO reexamination proceedings. *ASCII Corp. v. STD Entertainment USA, Inc.,* 844 F.Supp. 1378, 1381 (N.D.Cal.1994).

In determining whether to stay litigation pending reexamination by the PTO, courts generally consider the following factors: (1) the stage of litigation, i.e., whether discovery is almost complete and whether a

trial date has been set; (2) whether a stay would cause undue prejudice or present a clear disadvantage to the non-moving party; and (3) whether a stay will simplify the issues in question and trial of the case. *See, e.g., Xerox Corp. v. 3Com Corp.,* 69 F.Supp.2d 404, 406 (W.D.N.Y.1999).

**\*4** The Court finds that this litigation has not proceeded so far that it would be unjust to stay the action. Although this action was originally filed about a year ago, and the Court recognizes that substantial amounts of discovery have already occurred, the more relevant inquiry is whether discovery is nearing completion-it is not.[FN1] For instance, Magistrate Judge Bencivengo recently granted the parties permission to take an additional 10 depositions per side. [*See* Doc. # 159 at 2.] No deadline for the completion of fact discovery has even been set. Moreover, the parties are just beginning to brief the preliminary issue of claim construction and, in accordance with the decision above to vacate the bifurcated bench trial on equitable defenses, no trial date is currently set for any aspect of this case. In addition, while the Court has already considered two motions for summary judgment, it previously put off consideration of two others until after claim construction, and Plaintiff has just filed a substantial summary judgment motion aimed at piercing Black & Decker's corporate veil. The Court anticipates that further summary judgment motions regarding infringement and patent validity will be filed once claim construction is complete. Thus, a substantial amount of resources will be employed by all parties and the Court even in advance of any eventual trial. *See, e.g., Broadcast Innovation, L.L.C. v. Charter Communications, Inc.,* No. 03-cv-2223-ABJ-BNB, 2006 U.S. Dist. LEXIS 46623, at *26-31 (D.Colo. July 11, 2006) (granting stay, in part, because of significant work remaining on motions for summary judgement, even though trial date was less than three months away).

> FN1. In reaching this determination, the Court has considered the surreply submitted by Plaintiff and, therefore, the pending ex parte request to file a surreply [Doc. # 201] is **GRANTED.**

Plaintiff claims Defendants delayed filing their request for reexamination to gain a tactical advantage over it. He claims that Defendants were aware of the prior art that they reference in their reexamination request over seven months ago, but purposely delayed so that the '184 Patent would expire during the

reexamination process, thereby precluding Plaintiff from offering any amendments to the claims. Defendants respond that there was no intentional delay and that their decision to request reexamination was based, in part, on the Supreme Court decision in *KSR International Co. v. Teleflex Inc.,* ---U.S. ----, 127 S.Ct. 1727, 167 L.Ed.2d 705 (2007), which was only issued at the end of April. The Court is not convinced that Defendants employed any improper tactics in filing their request for reexamination. While Plaintiff is rightfully concerned that a reexamination in the twilight of his patent puts him at a distinct disadvantage, he could have prevented this situation by filing suit many years ago, thereby allowing sufficient time for any reexamination to occur before the patent expired.

Therefore, Plaintiff's cognizable claims of prejudice if a stay should be entered basically boil down to his inconvenience in delaying final collection of any monetary award of royalties, assuming he ultimately wins. However, as the court recognized in *Broadcast,* the prejudice factor "is best summarized by one question: *do the Plaintiffs have an adequate remedy at law?*" 2006 U.S. Dist. LEXIS 46623, at *32. Just as in *Broadcast,* the answer here is that clearly Plaintiff does have an adequate remedy. Defendants point out, and Plaintiff has not disputed, that the '184 Patent will expire in February 2008 independent of reexamination. Given that a trial on the merits could not occur prior to that date, Plaintiff would not have been granted any injunctive relief by this Court. Therefore, his claim would be restricted to past monetary damages, which, with the addition of prejudgment interest, are fully capable of compensating Plaintiff. Unfortunately, reexamination can be a drawn out process, resulting in a significant delay in court proceedings. Protracted delay is always a risk inherent in granting a stay, yet courts continue to stay actions pending reexamination. The general prejudice of having to wait for resolution is not a persuasive reason to deny the motion for stay. An average delay for reexamination of approximately 18-23 months is especially inconsequential where Plaintiff himself waited as many as twelve years before bringing the present litigation. (*See* PTO Reexamination Statistics at Ex. B to Niro Decl.; Doc. # 180-3.)

**\*5** In addition, the Federal Circuit has recently confirmed that the PTO would not be bound in its reexamination by the determinations of this Court. *In re Trans Texas Holdings Corp.,* 2006-1599 and 2006-1600, 2007 U.S.App. LEXIS 19909, at *14-19 (Fed.Cir. Aug. 22, 2007). Because of this, the Court finds that not only is Plaintiff unlikely to be prejudiced in these proceedings by a stay pending the PTO reexamination, but Defendants would potentially be prejudiced by *failing* to enter a stay. One court has explained this possibility accordingly:

Not only could the Court and the PTO reach conflicting determinations, but one possible scenario could result in irreparable harm to [Defendant]: if this Court finds that the [patent] is not invalid and that [Defendant] has infringed it, and orders [Defendant] to pay damages to [Plaintiff] for such infringement, then [Defendant] would have no ability to recover those damages if at a later date the PTO determined that the [ ] patent is invalid.

*Bausch & Lomb, Inc. v. Alcon Lab., Inc.,* 914 F.Supp. 951, 952 (W.D.N.Y.1996). The Court finds such a possibility to be, at a minimum, a highly undesirable outcome.

Finally, the Court finds that the stay will result in the simplification of issues in this case. As explained by the Federal Circuit, "[o]ne purpose of the reexamination procedure is to eliminate trial of [the issue of patent claim validity] (when the claim is canceled) or to facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding)."*Gould v. Control Laser Corp.,* 705 F.2d 1340, 1342 (Fed.Cir.1983), *cert. denied,*464 U.S. 935, 104 S.Ct. 343, 78 L.Ed.2d 310 (1983). The *Broadcast* court, elaborating on this point, explained:

Shifting the patent validity issue to the PTO has many advantages, including:

1. All prior art presented to the Court will have been first considered by the PTO, with its particular expertise.

2. Many discovery problems relating to prior art can be alleviated by the PTO examination.

3. In those cases resulting in effective invalidity of the patent, the suit will likely be dismissed.

4. The outcome of the reexamination may encourage a settlement without the further use of the Court.

5. The record of reexamination would likely be entered at trial, thereby reducing the complexity and length of the litigation.

6. Issues, defenses, and evidence will be more easily limited in final pretrial conferences after a reexamination.

7. The cost will likely be reduced both for the

parties and the Court.

2006 U.S. Dist. LEXIS 46623, at *9-10 (quoting *Emhart Indus., Inc. v. Sankyo Seiki Mfg. Co.,* 3 U.S.P.Q.2d 1889, 1890 (N.D.Ill.1987)).

The Court believes that it will benefit from the PTO's evaluation of how the previously unconsidered prior art references impact the claims of the patent-in-suit. The PTO's expert evaluation is likely to be of assistance not only as to the issues of validity, but its understanding of the claims is also likely to aid this Court in the preliminary process of claim construction.

**\*6** The Court finds that, especially in this case, the reexamination process has the potential to significantly narrow the issues for trial because of the impending expiration of the '184 Patent. While the parties have argued at length about exactly how this additional variable affects the calculation of the likely outcome of reexamination, the Court need not resolve this dispute to reach the proper conclusion. It is enough to note that when reexamination is requested by a third party, as in this case, all claims are confirmed only 29% of the time. (*See* PTO Reexamination Statistics at Ex. B to Niro Decl.; Doc. # 180-3.) Since no amendments can be offered to an expired patent, there is obviously a significant likelihood that the validity of the claims at issue in this action will be affected by the reexamination process.[FN2]

> **FN2.** Plaintiff has argued that the PTO is unlikely to grant reexamination precisely because the '184 Patent will expire soon. However, Plaintiff failed to produce any evidence to support this contention. Moreover, even if Plaintiff is correct, and the PTO fails to grant reexamination (a decision which should issue no later than October 30, 2007), this Court would immediately lift the stay and these proceedings would continue-a relatively insignificant 2-month delay being all that would result.

In addition, the Court expects that the reexamination process will not only aid the Court in these proceedings, but should also redound to the benefit of the parties, both Defendants and Plaintiff. As the *Broadcast* court explained in its discussion of the possibility of prejudice from entering a stay:

If the PTO does not invalidate or otherwise alter the claims of the [ ] patent, the Plaintiffs' legal remedy remains unaffected .... Moreover, if the claims are narrowed, both sets of parties will have benefitted by avoiding the needless waste of resources before this Court, and again, the Plaintiffs will be able to pursue their claim for money damages at trial. Finally, if the claims are strengthened, the Plaintiffs' position will be as well, and their likelihood of monetary damages will increase. *See, e.g., Motson,* 2005 U.S. Dist. LEXIS, 2005 WL 3465664 at *1 ("[I]f the PTO upholds the validity of plaintiff's patent, 'the plaintiff's rights will only be strengthened, as the challenger's burden of proof becomes more difficult to sustain.'") (quoting *Pegasus Dev. Corp.,* 2003 U.S. Dist. LEXIS 8052, 2003 WL 21105073 at *2).

2006 U.S. Dist. LEXIS 46623, at *32-33. Accordingly, the Court finds that a stay is appropriate to avoid the risk of unnecessary litigation and to permit the clarification of issues before this Court.

Therefore, Defendants' motion to stay this litigation is **GRANTED IN PART** and **DENIED IN PART.**With the exception of two pending motions, all proceedings are hereby stayed pending the PTO's reexamination of the '184 Patent. The Court will continue to hear Plaintiff's pending motion for entry of default against Defendant Porter-Cable Corporation [Doc. # 182], which is calendared for hearing on October 12, 2007. As was discussed above in Section I, the Court will also continue to hear B & D's pending motion for reconsideration of Magistrate Judge Bencivengo's August 3, 2007 order regarding production of Dennis Dearing's attorney work product [Doc. # 240], which is calendared for hearing on November 2, 2007. The Clerk is directed to **VACATE** all scheduled discovery hearings, as well as the claim construction hearing previously set for November 19, 2007. All hearing dates will be reset, to the extent appropriate, once the stay of these proceedings has been lifted.

**\*7** Defendants are ordered to file a notice informing the Court of the PTO's decision on the pending application for reexamination within 10 days of receipt of such decision. If the PTO declines B & D's request to reexamine the '184 Patent, the Court will immediately lift the stay and recalendar all vacated hearing dates. If, however, the PTO approves reexamination, this stay will remain in place pending some resolution of those proceedings. During the pendency of the reexamination, Defendants will be

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 6
Slip Copy, 2007 WL 2696590 (S.D.Cal.)
**(Cite as: Slip Copy)**

required to file a notice every 6 months apprising the Court of any change in the status of those proceedings.

### IV. Motion for Partial Summary Judgment

On August 30, 2007, Plaintiff filed a motion for partial summary judgment piercing the corporate veils of the Black & Decker Defendants, or in the alternative, holding them to be a single enterprise for purposes of patent infringement liability. [Doc. # 204.] The motion is presently calendared for hearing on October 26, 2007. In light of the Court's entry of a stay of these proceedings pending the PTO patent reexamination, the Court finds Plaintiff's motion to be premature. Accordingly, the Court hereby **DENIES** Plaintiff's motion without prejudice.[FN3] As the Court is aware of the substantial volume of Plaintiff's motion, he is invited to refile this motion once the stay has been lifted by simply filing a short notice of motion which incorporates by reference his earlier filing.

> [FN3.] Plaintiff's pending motion to file confidential documents under seal in support of the motion for partial summary judgment [Doc. # 204-5] is also **DENIED** as moot.

**IT IS SO ORDERED.**

S.D.Cal.,2007.
Sorensen ex rel. Sorensen Research and Development Trust v. Black and Decker Corp.
Slip Copy, 2007 WL 2696590 (S.D.Cal.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Exhibit B



Sorensen v. Digital Networks North America Inc.
N.D.Cal.,2008.
Only the Westlaw citation is currently available.
United States District Court,N.D. California.
Jens Erik SORENSEN, Plaintiff,
v.
DIGITAL NETWORKS NORTH AMERICA INC.;
Legacy Support Services, Ltd. d/b/a S2G; and Does 1
through 100, Defendants.
No. C 07-05568 JSW.

Jan. 16, 2008.

James Michael Kaler, Kaler Law Offices, Melody
Ann Kramer, Kramer Law Office, Inc., San Diego,
CA, for Plaintiff.
Theodore K. Bell, Daniel John Richert, Pillsbury
Winthrop Shaw Pittman LLP, Palo Alto, CA, Bradley
J. Hulbert, Kurt William Rohde, McDonnell Boehnen
Hulbert & Berghoff, Richard A. Machonkin, Attorney
at Law, Chicago, IL, for Defendants.

**ORDER GRANTING DEFENDANT'S MOTION
TO STAY LITIGATION PENDING
REEXAMINATION OF PATENT-IN-SUIT**

JEFFREY S. WHITE, District Judge.
    **\*1** Now before the Court is Defendant Digital
Networks North America Inc.'s ("DNNA") motion to
stay litigation during the pendency of reexamination
of United States Patent 4,935,184 (the "'184 Patent").
The Court finds that this matter is appropriate for
disposition without oral argument. *See* N.D. Civ. L.R.
7-1(b). Accordingly, the hearing set for January 18,
2008 is HEREBY VACATED. Having considered the
parties' pleadings and the relevant legal authority, the
Court HEREBY GRANTS DNNA's motion to stay
litigation.

**BACKGROUND**

    In this action, plaintiff Jens Erik Sorensen
("Sorensen") brings a claim for patent infringement of
the '184 Patent. Sorensen filed this action on
November 1, 2007 and served DNNA on November
12, 2007. On October 11, 2007, before this lawsuit
was filed, the Patent and Trademark Office ("PTO")
granted a request to reexamine the '184 Patent.
(Declaration of Kurt W. Rhode ("Rhode Decl."), Ex.

C.) The PTO notified Sorensen that newly submitted
prior art resulted in thirteen "substantial questions of
patenability" regarding the '184 Patent. (*Id.*) Maria
DNNA now moves the Court to stay litigation in the
above-captioned matter pending the PTO's
reexamination of the '184 Patent. The Court shall
address additional facts as necessary to its analysis in
the remainder of this Order.

**ANALYSIS**

**A. Legal Standards Applicable to a Motion to Stay
Proceedings Pending Reexamination.**

    The patent reexamination statute provides in
pertinent part that "[a]ny person at any time may file a
request for reexamination by the [PTO] of any claim
of a patent on the basis of any prior art cited under the
provisions of section 301." 35 U.S.C. § 302. The PTO
must "determine whether a substantial new question
of patentability affecting any claim of the patent
concerned is raised by the request ...." 35 U.S.C. §
303(a). The reexamination statute further provides
that "[a]ll reexamination proceedings ... including any
appeal to the Board of Patent Appeals and
Interferences, will be conducted with special
dispatch." 35 U.S.C. § 305.

    The determination of whether to grant a stay
pending the outcome of the PTO's reexamination is
soundly within the Court's discretion. *See Tap Pharm.
Prods. Inc. v. Atrix Labs. Inc.,* 70 U.S.P.Q.2d 1319,
1320 (N.D.Ill.2004) (citing *Gould v. Control Laser
Corp., 705 F.2d 1340, 1341 (Fed.Cir.1983)*). When
ruling on such a stay, courts consider several factors:
(1) the stage of the litigation, including whether
discovery is or will be almost completed and whether
the matter has been marked for trial; (2) whether a stay
will unduly prejudice or tactically disadvantage the
nonmoving party; and (3) whether a stay will simplify
the issues in question and streamline the trial, thereby
reducing the burden of litigation on the parties and on
the court. *Id.; Methode Elecs., Inc. v. Infineon Techs.
Corp.,* No. 99-21142, 2000 U.S. Dist. LEXIS 20689,
at \*5-6 (N.D.Cal. Aug. 7, 2000). There is a "liberal
policy in favor of granting motions to stay proceedings
pending the outcome of USPTO reexamination or
reissuance proceedings." *ASCII Corp. v. STD
Entertainment, 844 F.Supp. 1378, 1381*

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                 Page 2
Slip Copy, 2008 WL 152179 (N.D.Cal.)
**(Cite as: Slip Copy)**

(N.D.Cal.1994).

**B. Early Stage of the Litigation Favors a Stay.**

**\*2** Here, the early stage of this litigation weighs in favor of granting a stay pending reexamination. *See Target Therapeutics, Inc. v. SciMed Life Sys., Inc., 33 U.S.P.Q.2d 2022, 2023 (N.D.Cal.1995)* (holding that the absence of "significant discovery" or "substantial expense and time ... invested" in the litigation weighed in favor of staying the litigation); *see also ASCII Corp., 844 F.Supp. at 1381* (granting stay where parties had undertaken little or no discovery and the case had not yet been set for trial). Here, discovery has not even begun and DNNA has not yet responded to the complaint. The Court has not yet set any deadlines in this action regarding discovery, motions, or trial. Therefore, the fact that this case is still in the early stages and the parties have not yet conducted "significant discovery" or invested "substantial expense" into the litigation weighs in favor of granting a stay. *See Target Therapeutics, 33 U.S.P.Q.2d at 2023.*

**C. A Stay Will Not Unduly Prejudice Sorensen.**

In determining whether to grant a stay, courts also consider any resulting undue prejudice on the nonmoving party. *See Methode Elecs.,* 2000 U.S. Dist. LEXIS 20689, at \*7. Granting a stay does not cause the nonmoving party undue prejudice when that party has not invested substantial expense and time in the litigation. *Id.* The delay inherent to the reexamination process does not constitute, by itself, undue prejudice. *Pegasus Dev. Corp. v. DirecTV, Inc., 2003 WL 21105073, at \*2 (D.Del. May 14, 2003).*

Courts also consider evidence of dilatory motives or tactics, such as when a party unduly delays in seeking reexamination of a patent. *Methode Elecs.,* 2000 U.S. Dist. LEXIS 20689, at \*7. This is not a case where reexamination is sought on the eve of trial or after protracted discovery. *Cf. Agar Corp., Inc. v. Multi-Fluid, Inc., 983 F.Supp. 1126, 1128 (S.D.Tex.1997)* (finding that "courts are inclined to deny a stay when the case is set for trial and the discovery phase has almost been completed"). Rather, another party filed the request to reexamine the '184 Patent, and the request was granted even before Sorensen filed the instant lawsuit. DNNA promptly sought to stay this action pending the reexamination proceedings. The Court finds that Sorensen has not

presented any evidence of dilatory motives or shown that he would be unduly prejudiced or tactically disadvantaged if this Court were to grant a stay. Although Sorensen presents concerns that his ability to conduct discovery may be impaired by the delay in litigation, the Court finds that DNNA has submitted sufficient evidence to allay such concerns. Accordingly, the Court finds that a stay will not unduly prejudice Sorensen, and thus, this factor also weighs in favor of granting a stay

**D. A Stay Will Simplify the Issues, Streamline the Trial, and Reduce the Burden of Litigation on Both Parties and the Court.**

Because the patent-in-suit is currently being reexamined, the Court finds that this patent infringement action should be stayed during the pendency of the reexamination. The Court finds that such a stay will simplify the issues and streamline the trial, thereby reducing the burden on, and preserving the resources of both the parties and the Court.

**\*3** Therefore, having considered the factors relevant in determining whether to grant a stay pending reexamination, the Court hereby GRANTS DNNA's motion to stay all proceedings pending reexamination of the '184 Patent.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS DNNA's motion to stay pending reexamination of the '184 Patent. The proceedings are stayed from the date of this Order until further notice. The Court HEREBY ORDERS the parties to submit a joint status report regarding the status of the reexamination proceedings every 120 days, or sooner if the PTO issues a final decision with respect to the '184 Patent, until the stay in this case is lifted.

**IT IS SO ORDERED.**

N.D.Cal.,2008.
Sorensen v. Digital Networks North America Inc.
Slip Copy, 2008 WL 152179 (N.D.Cal.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Exhibit C



Target Therapeutics, Inc. v. SciMed Life Systems, Inc.
N.D.Cal. 1995

United States District Court,N.D. California.
TARGET THERAPEUTICS, INC., Plaintiff,
v.
SCIMED LIFE SYSTEMS, INC., and Cordis
Endovascular Systems, Inc., Defendants.
**No. C-94-20775 RPA (EAI).**

Jan. 13, 1995.

ORDER GRANTING STAY

**\*1** Defendant Cordis Endovascular Systems, Inc. ("Cordis") moves for a stay of this patent infringement action pending re-examination of Plaintiff Target Therapeutics, Inc.'s ("Target") United States Patent No. 4,739,768. The court, after reading the moving and responding papers, deemed this motion submitted without oral argument. For the reasons discussed below, Cordis' motion to stay is GRANTED.

BACKGROUND

This action arises out of defendants alleged infringement of Target's '768 Patent, which covers a microcatheter device used in the treatment of neurovascular disorders. The '768 patent issued in 1988. In June 1993, Target initiated a reexamination of the patent based on the discovery of prior art which the United States Patent and Trademark Office ("PTO") had not considered in 1988. During the reexamination, Target voluntarily cancelled several claims of the original patent and submitted revised patent language in their place. On August 4, 1994, the PTO announced that the revised claims were patentable and that it would issue Target a Reexamination Certificate with those revised claims.

On August 22, 1994 defendant SciMed Life Systems, Inc. ("SciMed") filed a request for a second examination. Scimed based its reexamination petition on two pieces of prior art: the '176 patent, the scope of which SciMed claims Target misrepresented to the PTO during the first reexamination; and a 1967 article describing a catheter which allegedly anticipates the

claims of the '768 Patent. The PTO granted Scimed's request for reexamination on October 23, 1994, finding that the newly submitted prior art raised a "substantial new question of patentability." 35 U.S.C. § 305(a). On November 9, 1994, Target filed the instant action against Cordis and SciMed. Cordis now moves for a stay of all proceedings until the PTO has completed reexamination of the '768 Patent.

ANALYSIS

Cordis argues that this litigation should be stayed because the reexamination may cancel or substantially change the claims of the '768 Patent. A stay of the proceedings, Cordis contends, will result in the simplification of issues and help avoid the possibility of unnecessary litigation.

A district court has the inherent power to control and manage its docket. Gould v. Control Laser Corp., 705 F.2d 1340, 1341 (Fed.Cir.1983), cert. denied,464 U.S. 935 (1983). This power includes the authority to order a stay pending the outcome of reexamination proceedings in the PTO. Ethicon v. Quigg, 849 F.2d 1422, 1426 (Fed.Cir.1988); Gould, 705 F.2d at 1342. "There is a liberal policy in favor of granting motions to stay proceedings pending the outcome of reexamination proceedings." ASCII Corp. v. STD Entertainment USA, Inc., 844 F.Supp. 1378, 1381 (N.D.Cal.1994). In ruling on a motion to stay, courts consider whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party, whether a stay will simplify the issues in question and trial of the case, whether discovery is completed and whether a trial date has been set. GPAC, Inc. v. DWW Enterprises, Inc., 144 F.D.R. 60, 66 (D.N.J.1992); United Sweetener USA, Inc. v. Nutrasweet Co., 766 F.Supp. 212, 217 (D.Del.1991).

**\*2** In this case, the relevant factors weigh heavily in favor of staying the proceedings pending the conclusion of the reexamination. First, this case is in its incipient stages. The parties have not engaged in expensive discovery and no trial date has been set. Second, waiting for the outcome of the reexamination could eliminate the need for trial if the claims are cancelled or, if the claims survive, facilitate trial by providing the court with expert opinion of the PTO

Not Reported in F.Supp.                                                                              Page 2
Not Reported in F.Supp., 1995 WL 20470 (N.D.Cal.), 33 U.S.P.Q.2d 2022
**(Cite as: Not Reported in F.Supp.)**

and clarifying the scope of the claims. The claims of the patent will likely be amended or narrowed during reexamination. *See Output Tech. Corp. v. Dataproducts Corp.,* 22 U.S.P.Q. 1072, 1074 (W.D.Wash.1991) (noting that 77% of reexaminations lead to cancelled or amended claims). The final form of the claims therefore will remain uncertain until the conclusion of the reexamination procedure. It makes sense to ascertain the ultimate scope of the claims before trying to figure out whether defendants' products infringe the patent-in-suit. Absent a stay, the parties may end up conducting a significantly wider scope of discovery than necessary, and the court may waste time examining the validity of claims which are modified or eliminated altogether during reexamination.

Finally, Target has failed to demonstrate that it will suffer undue prejudice if this action is stayed. As mentioned above, this case, filed only two months ago, is brand new. No significant discovery or trial preparation has taken place. As in *GPAC, supra,* "[plaintiff] has not demonstrated that substantial expense and time has been invested in this litigation which would militate against a further delay of disposition of this matter." 144 F.R.D. at 64. Nor is there any merit to Target's suggestion that SciMed initiated reexamination proceeding as a dilatory tactic. Scimed filed its request for reexamination within three weeks of the PTO's announcement that it would issue a reexamination certificate with revised claims and months before Target filed this lawsuit. By contrast, in *Freeman v. Minnesota Mining,* 661 F.Supp. 886 (D.Del.1987), a case on which Target relies, the defendant was aware of prior art on which the reexamination was based eight months before filing a petition for reexamination and the reexamination petition was filed more than two years after the plaintiff had filed suit.

For the foregoing reasons, the court concludes that this action should be stayed pending the outcome of the reexamination of the '768 Patent. Cordis' motion to stay is GRANTED.

IT IS SO ORDERED.

N.D.Cal. 1995
Target Therapeutics, Inc. v. SciMed Life Systems, Inc.
Not Reported in F.Supp., 1995 WL 20470 (N.D.Cal.), 33 U.S.P.Q.2d 2022

END OF DOCUMENT

# Exhibit D



CHewlett-Packard Co. v. Acuson Corp.
N.D.Cal.,1993.
Only the Westlaw citation is currently available.
United States District Court, N.D. California.
HEWLETT-PACKARD COMPANY, Plaintiff,
v.
ACUSON CORPORATION, Defendant.
**No. C-93-0808 MHP.**

May 5, 1993.

MEMORANDUM AND ORDER

PATEL, District Judge.
   **\*1** Plaintiff Hewlett-Packard Company ("HP")
brought this action on March 8, 1993 against
defendant Acuson Corporation ("Acuson") for
allegedly infringing upon United States patent No.
4,140,022 (" '022"). Prior to this action, Acuson
submitted to the United States Patent and Trademark
Office ("PTO") a petition for reexamination of the
'022 patent pursuant to 35 U.S.C. §§ 301-07. The
matter is presently before the court on Acuson's
motion to stay litigation pending the reexamination.

   Having considered the submissions and
arguments of the parties, and for the following
reasons, the court GRANTS Acuson's motion to stay
litigation pending reexamination.

BACKGROUND

   While working for HP, Samuel H. Maslak
("Maslak") discovered an ultrasonic imaging
invention. Pursuant to an employment agreement,
Maslak (1) assigned to HP all of his right, title and
interest in and to his invention, (2) expressly
authorized HP to apply for and obtain a patent for the
invention and (3) agreed to assist in obtaining such
patent. Opp. to Mot. for Stay, Ex. 3.

   On December 20, 1977 HP filed a United States
patent application covering Maslak's invention,
identifying Maslak as the inventor and HP as the
assignee. McElhinny Dec., Ex. B at 1. A formal
Notice of Allowance for the '022 patent issued on
August 31, 1978, Opp. to Mot. for Stay, Ex. 7, and the
patent issued on February 20, 1979. McElhinny Dec.,

Ex. B at 1. Maslak gave notice of his resignation from
HP on November 20, 1978. Opp. to Mot. for Stay, Ex.
8.

   In September 1981, Maslak co-founded Acuson
and has been President, Chief Executive Officer and a
director since that date. Oakley Dec., Ex. 2 at 30.
Acuson introduced its first medical diagnostic
imaging system in 1983. Id. ¶ 3.

   By letter dated June 1, 1990, HP contacted
Acuson regarding possible infringement of its '022
patent. Id. ¶ 2. Acuson filed a Request for
Reexamination of the '022 patent with the PTO on
March 3, 1993. McElhinny Dec., Ex. D. Grounds for
reexamination raised by Acuson include anticipation,
double patenting and obviousness. Id., Ex. D at 2-3.
Acuson claims that the references cited to in its
Request for Reexamination were not cited to or
considered by the PTO during the original '022 patent
proceedings. Id., Ex. D at 4. On March 8, 1993 HP
filed this action alleging that Acuson's medical
diagnostic systems infringe upon the '022 patent.
Acuson now moves for a motion staying the litigation
pending reexamination by the PTO.

*LEGAL STANDARD*

   This circuit has held that the district court has the
authority to stay actions in order to:
   control the disposition of the cases on its docket
in a manner which will promote economy of time and
effort for itself, for counsel, and for litigants. The
exertion of this power calls for the exercise of a sound
discretion. Where it is proposed that a pending
proceeding be stayed, the competing interests which
will be affected by the granting or refusal to grant a
stay must be weighed. Among these competing
interests are the possible damage which may result
from the granting of a stay, the hardship or inequity
which a party may suffer in being required to go
forward, and the orderly course of justice measured in
terms of the simplifying or complicating of issues,
proof, and questions of law which could be expected
to result from a stay.

   **\*2** *Filtrol Corp. v. Kelleher,* 467 F.2d 242, 244
(9th Cir.1972), *cert. denied,* 409 U.S. 1110 (1973)
(citations omitted). Ordinarily, courts need not expend

Not Reported in F.Supp.                                                                    Page 2
Not Reported in F.Supp., 1993 WL 149994 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.)**

unnecessary judicial resources by attempting to resolve claims which may be amended, eliminated, or lucidly narrowed by the patent reexamination process and the expertise of its officers. *See Gould v. Control Laser Corp.,* 705 F.2d 1340, 1342 (Fed.Cir.), *cert. denied,*464 U.S. 935 (1983).[FN1] The purpose of the reexamination procedure is to eliminate the need for a trial if the claim is canceled or to provide the district court with the expert view of the Patent Office if the claim survives the reexamination. *Id.* Additionally, there is clear congressional intent to maximize efficiency and reduce cost in this regard; thus, district courts often stay patent proceedings pending reexamination. *See, e.g., Ingro v. Tyco Industries, Inc.,* 227 U.S.P.Q. (BNA) 69, 71 (N.D.Ill.1985) ("legislative history indicates Congress ... approved of courts liberally granting stays within their discretion."); *Digital Magnetic Systems, Inc., v. Ansley,* 213 U.S.P.Q. (BNA) 290 (W.D.Okla.1982) ("Congress enacted the reexamination procedure to provide an inexpensive, expedient means of determining patent validity which, if available and practical, should be deferred to by the courts.").[FN2]

*DISCUSSION*

During oral argument, HP admitted that it was on notice that Acuson might be infringing its '022 patent as early as 1983. While the court applauds HP's efforts to settle its dispute with Acuson through means other than litigation, HP's ten year delay in seeking to protect its patented interests weighs heavily against denying Acuson's motion for stay.[FN3] Indeed, the first record of correspondence with Acuson concerning patent infringement is dated June 1, 1990. Oakley Dec. ¶ 2. The record also shows that HP did not seek to enforce its patent until after Acuson had filed its Request for Reexamination of the '022 patent. The court finds that these combined factors compel a grant of Acuson's request for a stay pending the PTO proceedings.

Moreover, the court is not persuaded by HP's assignor estoppel argument opposing Acuson's motion for stay. Acuson alleges that reexamination of patent '022 will result in an amendment or cancellation of the patent, thus streamlining the current litigation. Specifically, Acuson argues that HP failed to disclose to the PTO, during the original '022 patent proceedings, evidence of a patent previously issued to HP,[FN4] which would bear upon the patentability of the '022 patent.[FN5] Acuson urges that the technical nature of both the prior art and the '022 patent dictate that this

court issue a stay so that the PTO's expertise can be brought to bear in assessing this question and in determining whether or not the '022 may be narrowed, amended or invalidated.

HP, on the other hand, opposes a stay of the present litigation. HP argues that Acuson is barred under the doctrine of assignor estoppel, as a matter of law, from alleging patent invalidity or unenforceability as a defense to the underlying infringement action. In support of this proposition, HP cites *Diamond Scientific Co. v. Ambico, Inc.,* 848 F.2d 1220, 1224 (Fed.Cir.), *cert. dismissed,*487 U.S. 1265 (1988).

**\*3** Assignor estoppel is an equitable doctrine that prevents one who has assigned the rights to a patent (or patent application) from later contending that what was assigned is a nullity. The estoppel also operates to bar other parties in privity with the assignor, such as a corporation founded by the assignor.[FN6]

*Diamond,* 848 F.2d at 1224. Therefore, HP urges, Acuson's motion for stay pending reexamination for invalidity or unenforceability is without merit.

Although HP's argument may apply as a litigation strategy in the underlying infringement action, is not entirely persuasive on the motion for stay.[FN7] In fact, for the following reasons, this court finds that a stay in this action will "promote economy of time and effort for itself, for counsel, and for [the] litigants." *Filtrol,* 467 F.2d at 244.

First, *Diamond* indicates that the doctrine of assignor estoppel is not an all or nothing bar to an assignor's invalidity defense in an infringement proceeding. 848 F.2d at 1226. *Diamond* recognizes an "accommodation" to the assignor estoppel doctrine which may frustrate the use of estoppel to bar a defense of invalidity in a patent infringement case. The "accommodation" was carved out by *Westinghouse Elec. & Mfg. Co. v. Formica Insulation Co.,* 266 U.S. 342, 350-53 (1924).

"To the extent that [the party claiming infringement] may have broadened the claims in the patent applications (after the assignments) beyond what could be validly claimed in light of the prior art, *Westinghouse* may allow appellants to introduce evidence of prior art to narrow the scope of the claims of the patents, which may bring their accused devices outside the scope of the claims of the patents in suit."

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Diamond,* 848 F.2d at 1226 (citing *Westinghouse,* 266 U.S. at 350). Thus, the reexamination of '022 will, more likely than not, simplify the issues, proof, and questions of law relating to this "accommodation," *see Filtrol,* 467 F.2d at 244, and expedite the infringement litigation by clarifying whether HP's claim to assignor estoppel may prevail in the infringement litigation, or will be frustrated by the "accommodation".

Second, as Acuson correctly points out, assignor estoppel is an equitable doctrine. "[T]he primary consideration in [ ] applying the doctrine is the measure of unfairness and injustice that would be suffered by the assignee if the assignor were allowed to raise defenses of patent invalidity. Our analysis must be concerned mainly with the balance of equities between the parties." *Diamond,* 848 F.2d at 1225;*accord, Carroll Touch v. Electro Mechanical Systems, Inc.,* 779 F.Supp. 101, 103 (C.D.Ill.1991)(*Diamond* did not create a mechanical checklist for application of assignor estoppel, the court must still consider the equities involved in applying the doctrine). Therefore, Acuson's claim that HP's conduct before the PTO was inequitable and fraudulent in reference to the original '022 patent proceeding may very will bar HP from relying on the doctrine of assignor estoppel during the infringement litigation. *See Shamrock Technologies v. Medical Sterilization, Inc.,* 903 F.2d 789, 795 (Fed.Cir.1990) ("in a proper case general principles of equity may preclude use of assignor estoppel to bar a viable equitable defense arising from post-assignment events"); *accord, Buckingham Prods. Co. v. McAleer Mfg. Co.,* 108 F.2d 192, 195 (6th Cir.1939); *see also, Medical Designs, Inc. v. Medical Technology, Inc.,* 786 F.Supp. 614, 618 (N.D.Tex.1992) (application of assignor estoppel barred when party seeking patent proceeded without calling to the attention of the PTO material prior art).

**\*4** This second factor weighs heavily in favor of staying the litigation pending the PTO's reexamination of the '022 patent. In the event that a trial court should bar HP from using assignor estoppel after weighing the equities, the reexamination process, having possibly narrowed or eliminated some of the infringement claims, could greatly increase the efficiency of the litigation process. *See Gould,* 705 F.2d at 1342.

Therefore, this court finds that the possible hardship to HP, including delay of injunctive relief, is outweighed by the orderly cause of justice measured

in terms of the simplification of issues, proof, and questions of law which are expected to result from the stay.[FN8]*Filtrol,* 467 F.2d at 244;*see also Gould,* 705 F.2d at 1342.

CONCLUSION

For all the foregoing reasons, Defendant's motion for a stay of litigation pending the later of (1) the decision by the United States Patent and Trademark Office on Defendant's request for reexamination of U.S. Letter Patent N. 4,140,022 ('022), or (2) the conclusion of the reexamination proceedings is GRANTED.

IT IS SO ORDERED.

FN1.*See also, Grayling Industries v. GPAC, Inc.,* 19 U.S.P.Q.2d (BNA) 1872, 1873 (N.D.Ga.1991); *Brown v. Simano American Corp.,* 18 U.S.P.Q.2d (BNA) 1496 (C.D.Cal.1991).

FN2. For more detailed information in support of a stay of patent proceedings pending reexamination, *see Teradyne, Inc. v. Hewlett-Packard Company,* Civil Action No. C-91-0344 MHP (Memorandum and Order, Jan. 7, 1993), at 16-20.

FN3. The present action is brought with only three years remaining in the life of the patent.

FN4. Acuson alleges that the '229 is also owned by HP and was prosecuted by the same attorney as the '022.

FN5. Acuson bolsters this claim by arguing that during the prosecution of the German equivalent of '022, Siemans Corporation cited the '229 against the '022. Acuson states that HP amended and narrowed claim 1 of the '022 patent as a result.

FN6. In *Lear, Inc. v. Adkins,* 395 U.S. 653, 668-71 (1969), the Supreme Court abolished as inconsistent with federal patent and antitrust policy the doctrine that a licensee was estopped from contesting the validity of a patent. However, the doctrine that an assignor was estopped from contesting the validity of a patent was not addressed by the

Not Reported in F.Supp.                                                                    Page 4
Not Reported in F.Supp., 1993 WL 149994 (N.D.Cal.)
**(Cite as: Not Reported in F.Supp.)**

Court. As a result, it remained unclear whether the rule of *Lear* should also be applied to assignor estoppel. As late as 1972, the rule of this circuit was that the *Lear* rule should be applied. *See Coastal Dynamics Corp. v. Symbolic Displays, Inc., 469 F.2d 79 (9th Cir.1972)*(*Lear* dictates abolition of assignor estoppel). However, the passage of 29 U.S.C. § 1295 gave exclusive jurisdiction to the Federal Circuit on appeals from district court decisions involving patent law under 28 U.S.C. § 1338. And, in 1988, the Federal Circuit found that the rule of *Lear* did not apply to assignor estoppel, distinguishing assignor estoppel from licensee estoppel. *See Diamond, 848 F.2d at 1224* (assignor estoppel available to bar invalidity defense in infringement proceedings).

FN7. Whether HP has met all of the equitable requirements to use assignor estoppel to bar a defense of invalidity by Acuson in the infringement action is not before the court. Rather, the court, at this juncture, is concerned only with Acuson's motion for stay. While HP's intended use of assignor estoppel may bear upon the court's determination of stay, it is not dispositive.

FN8. HP claims no other substantial hardship other than the delay in obtaining injunctive relief based on a finding that Acuson has infringed the '022 patent. The court finds that the stay involved is not of such a protracted or indefinite period as to render its issuance an undue hardship. The fact that the life of the patent may expire before the stay is up is of no moment; other remedies besides injunctive relief still remain available to HP.

N.D.Cal.,1993.
Hewlett-Packard Co. v. Acuson Corp.
Not Reported in F.Supp., 1993 WL 149994 (N.D.Cal.)

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# Exhibit E



▶BEN **INGRO**, Plaintiff, v.

United States District Court, N.D. Illinois, Eastern Division.
BEN **INGRO**, Plaintiff,
v.
**TYCO** INDUSTRIES, INC., SEARS ROEBUCK AND CO., MONTGOMERY WARD & CO., INC., SPIEGEL ORDER STORES, INC., VENTURE STORES, INC., OSCO DRUG, INC., TOYS 'R' US, INC., K MART CORPORATION, CIRCUS WORLD TOY STORES, INC., SERVICE MERCHANDISE COMPANY, INC., ZAYRE CORP., WIEBOLDT STORES, INC., CHILDREN'S PALACE, INC., J. C. PENNEY COMPANY, INC., HOUSEHOLD MERCHANDISING, INC., and McDADE & COMPANY, Defendants.
**No. 84 C 10844.**

May 31, 1985.

MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

**\*1** In December of 1984, plaintiff Ben Ingro filed a complaint against Tyco Industries, Inc. and fifteen of its customers alleging infringement of plaintiff's patent, U. S. Patent 3,810,515. On or about January 23, 1985, Tyco filed a request for reexamination of the patent with the U. S. Patent and Trademark Office (PTO); on April 5, 1985, the PTO granted the request on the grounds that it raised a substantial new question of patentability affecting all claims of the patent. In the meantime, on February 12, 1985, Tyco filed a motion to stay the proceedings in this litigation pending a final determination in the reexamination proceedings. For the following reasons, Tyco's motion will be granted.

Reexamination is a relatively new procedure by which any person can request that the PTO reexamine or reevaluate the patentability of an unexpired U. S. patent. A request for such a reexamination must be based upon prior art patents or publications which raise 'a substantial new question of patentability.' Typically, the cited prior art patents or printed publications upon which such a request is based are ones which were not considered by the patent examiner during the processing of the patent application which resulted in the patent-in-suit. Once a reexamination request is granted, a Patent Examiner who is familiar with the technology involved with the patent conducts the reexamination and is obligated to do so 'with special dispatch.' 37 C.F.R. § 1.550(a).

Determining the desirability of staying district court proceedings pending the outcome of a reexamination proceeding resides in the discretion of the district court. Rather than terminating the action, a stay operates to shift to the PTO an issue, patent claim validity, involved in the dispute before the district court. As Chief Judge Markey, writing for the Court of Appeals for the Federal Circuit noted:

One purpose of the reexamination procedure is to eliminate trial of [the issue of patent claim validity] (when the claim is canceled) or to facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding). Early versions of what became the reexamination statute (citation omitted) expressly provided for a stay of court proceedings during reexamination (citation omitted). An express provision was deemed unnecessary, however, as explained in the House report:

The bill does not provide for a stay of court proceedings. It is believed by the committee that stay provisions are unnecessary in that such power already resides with the Court to prevent costly pre-trial maneuvering which attempts to circumvent the reexamination procedure. It is anticipated that these measures provide a useful and necessary alternative for challengers and for patent owners to test the validity of United States patents in an efficient and relatively inexpensive manner. (Original emphasis) (Citations omitted)

Gould v. Control Laser Corp., 705 F.2d 1340 (F. Cir. 1983).

**\*2** Moreover, as an Oklahoma district court has noted:

Congress enacted the reexamination procedure to provide an inexpensive, expedient means of determining patent validity which, if available and practical, should be deferred to by the courts. Parties should not be permitted to abuse the process by applying for reexamination after protracted, expensive

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                      Page 2
Not Reported in F.Supp., 1985 WL 1649 (N.D.Ill.), 227 U.S.P.Q. 69
(Cite as: Not Reported in F.Supp.)

discovery or trial preparation. Yet, in cases . . . which have not progressed beyond the initial litigation stages and in which the plaintiff has an adequate legal remedy, the reexamination procedure should be utilized.

Digital Magnetic Systems, Inc. v. Ansley, 213 U.S.P.Q. (BNA) 290 (W.D. Okla. 1982). Although the present case is in its initial stages (only a single interrogatory and three production requests have been served), and plaintiff has the adequate remedy of money damages if his patent is found to be valid and infringed, plaintiff objects to a stay of the proceedings on nine grounds.

Three of plaintiff's objections to a stay have recently been considered and rejected by the Federal Circuit Court of Appeals, which, as of October 1, 1982, has had exclusive appellate jurisdiction over all patent infringement cases; a fourth objection has been rendered moot by the PTO's granting Tyco's request for reexamination. Three of plaintiff's objections allege constitutional infirmities with the reexamination proceedings; these objections have now been answered by the Federal Circuit Court of Appeals' holding in Patlex Corp. v. Mossinghoff, No. 84-699 (F. Cir. March 7, 1985). There, the Federal Circuit affirmed the decision of the district court that 35 U.S.C. §§ 301-307, the reexamination statutes, do not violate the Fifth Amendment, the Seventh Amendment, or Article III. Plaintiff has also protested that Tyco's requested stay is premature, since the request for reexamination had not been granted as of the time plaintiff responded to the motion. Defendants' request was granted on April 5, 1985, however, and thus, plaintiff's objection of prematurity is now moot.

A fifth objection plaintiff makes to the motion for a stay is the allegation that Tyco made the request for reexamination to harass plaintiff and to delay the litigation unduly and unreasonably. The evidence does not support plaintiff's allegation. Tyco explains that although plaintiff invited Tyco on April 5, 1984, to institute reexamination proceedings and indicated that plaintiff would then defer to the PTO, Tyco chose not to institute reexamination proceedings at that time since additional negotiations continued to occur between the parties. Tyco also contends that it had hoped plaintiff would be persuaded by Tyco's position that the new prior art not previously considered by the PTO invalidated the patent, and Tyco had hoped to avoid the expenses involved in a request for reexamination. Tyco's explanation is buttressed by the fact that after Tyco initially identified to plaintiff the prior art not previously considered by the PTO, plaintiff later disclaimed claims 1 and 2 of his patent.

*3 Tyco also points out that in response to K Mart Corporation's Interrogatory No. 1, plaintiff indicated that it 'became aware of K Mart's infringing use and sale of his patented magnetic car' as early as 1977 and confirmed such sales each year since 1977. Nevertheless, plaintiff waited to commence litigation almost seven years after his first knowledge of alleged infringement and almost six years after the alleged first contact between plaintiff and Tyco. The court agrees that especially in light of plaintiff's own delay in initiating litigation, a stay pending completion of reexamination proceedings, which on the average involve 15.9 months from filing date to termination in the PTO, will constitute neither undue nor unreasonable delay. (Reexamination Filing Data, Defendant's Exhibit B). Plaintiff's concern that Tyco or the other defendants may file multiple requests for reexamination for the purpose of delay if the current request is denied is also unwarranted; this court can later modify or vacate the stay if it is abused.

Plaintiff's initially most appealing argument against a stay is entitled 'Proof of Damages Becomes Stale' and alleges that if discovery must wait until the termination of the reexamination proceedings, Ingro 'will have lost the opportunity to collect necessary documents from the various defendants and third parties.' However, as Tyco points out, seeking discovery relating to proof of damages from defendants at this point in the litigation would be premature until after discovery on liability has been conducted. Plaintiff's claimed need 'to go back to 1970 to prove prior invention over some of the cited patents' will probably not require discovery of others, and defendants have pledged to make every effort to retain existing records relating to the manufacture, use, and sale of the products involved in this litigation. Tyco has also indicated that because of Aurora Products of Canada, Ltd.'s alleged liquidation, Tyco would not object to plaintiff's attempt to obtain from Aurora relevant documents and the identification of prospective witnesses. Because of the time, effort, and expense involved in discovery of damages and other issues involving the named defendants and third parties other than Aurora, however, such other discovery should await the outcome of the reexamination proceedings.

Plaintiff's next argument, that summary judgment

Not Reported in F.Supp.                                                                                               Page 3
Not Reported in F.Supp., 1985 WL 1649 (N.D.Ill.), 227 U.S.P.Q. 69
**(Cite as: Not Reported in F.Supp.)**

would be a superior alternative to a stay of the proceedings, makes little sense. As Tyco points out, plaintiff argues inconsistent positions; on one hand, he argues that the obviousness test as applied to the patented invention is simple, indicating that no genuine issues of material fact exist; on the other hand, he contends that experts may be necessary to set forth or assess the facts and seeks a trial by jury of the 'difficult issues of obviousness.' Moreover, a motion for summary judgment is neither pending nor believed to be appropriate at the present time.

Contrary to plaintiff's next argument against a stay, that only patent holders lose during reexamination proceedings, plaintiff's patent probably will be enhanced if it is recertified in the reexamination proceedings. As the Federal Circuit has stated with respect to a successful reissue application:

**\*4** [I]t is clearly appropriate that the jury be instructed that because the PTO has now held the claims in suit patentable in light of the additional art discovered by Sowa, its burden of proof of unpatentability has become more difficult to sustain-a fact likewise to be taken into account by the trial judge.

American Hoist v. Derrick Co. v. Sowa & Sons, Inc., 725 F.2d 1350, 1354 (Fed. Cir. 1984). Futhermore, if the patent is upheld upon reexamination, plaintiff may recover from any who have infringed in the interim.

Finally, rather than a stay pending reexamination running counter to the reexamination statutes' legislative history, such legislative history indicates Congress and the testifying witnesses approved of courts liberally granting stays within their discretion. As the Federal Circuit recently stated:

The bill's proponents foresaw three principal benefits [of the reexamination legislation]. First, the new procedure could settle validity disputes more quickly and less expensively than the often protracted litigation involved in such cases. Second, the procedure would allow courts to refer patent validity questions to the expertise of the Patent Office.See Senate Hearings at 1, wherein Senator Bayh said that reexamination would be 'an aid' to the trial court 'in making an informed decision on the patent's validity'. Third, reexamination would reinforce 'investor confidence in the certainty of patent rights' by affording the PTO a broader opportunity to review 'doubtful patents'.126 Cong. Rec. 29,895 (1980) (statement of Rep. Kastenmeier).

When Congress voted the reexamination statute into law, it had before it a voluminous record to the effect that the procedure was an important step forward for the United States patent system and for the public interest that the system is charged to serve. Congress, without apparent objection, applied the legislation to all unexpired patents.

Patlex Corp., v. Mossinghoff, No. 84-699, slip. op. at 15-16 (F. Cir. March 7, 1985).

Accordingly, for the foregoing reasons, Tyco's motion to stay all further activities in connection with this action, pending a final determination in the reexamination proceeding, will be granted.

It is so ordered.

Ingro v. Tyco Industries, Inc.
Not Reported in F.Supp., 1985 WL 1649 (N.D.Ill.), 227 U.S.P.Q. 69

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.